JULIA ROSARIO VDA. DE ROSARIO, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

Núm. 1090.—*Sometido:* Noviembre 3, 1941. *Resuelto:* Noviembre 3, 1941.

*Fiddler, McConnell & González* y *J. M. Morales,* abogados de la recurrente; el registrador recurrido no compareció.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Por escritura núm. 25 de 15 de mayo de 1940, ante el notario don Jorge Morales, The National City Bank of New York, representado por los Sres. William L. Pope y Donald P. Campbell, vendió a la recurrente cierto solar radicado en el Barrio Matón Arriba de Cayey. Presentada dicha escritura en el Registro de la Propiedad de Guayama, fué denegada su inscripción por los fundamentos de la siguiente nota :

"Denegada la Inscripción del presente documento al folio 241 del tomo 98 del Municipio de Cayey, finca número 3654, anotación letra 'A', por observarse que a la luz del artículo 14 de la Ley Notarial según quedó enmendado por la ley número 7 de 23 de marzo de 1937, esta escritura es nula por no resultar que la compradora, que no sabe firmar, haya estampado sus huellas digitales en cada hoja o plana de la misma; y por observarse además que el poder sobre el cual apoyan los mandatarios sus facultades es insuficiente por los

siguientes motivos:—(*a*) porque habiendo sido el poder otorgado fuera de la Isla de Puerto Rico no ha sido protocolizado con arreglo al artículo 4 de la Ley de Registro de Poderes de mayo 8 de 1937; ni se ha tomado razón del mismo en el Registro de Poderes creado por dicha ley; (*b*) porque tratándose de una sustitución a virtud de la cual William A. Simonson delega en W. L. Pope y en la persona autorizada para actuar como Manager de cualquier sucursal del National City Bank of New York en Puerto Rico ciertas facultades conferidas al primero por la Junta de Directores de dicho Banco, no se acompaña para calificarlo el documento a virtud del cual se concedieron dichos poderes originales; (*c*) porque no se expresa la persona cierta a quien se designa, en unión del Sr. Pope, como mandatario sustituto ni se acredita en todo caso que el Sr. Campbell sea Manager de una Sucursal del Banco en Puerto Rico y (*d*) porque en todo caso, de no ser necesaria la protocolización, no es admisible el llamado Testimonio por Exhibición en el cual meramente se inserta copia de la delegación de poderes sin que el Notario dé fe, ni pueda darla, de la autenticidad del documento exhibido, el cual, para que surta efecto contra tercero debe quedar incorporado en un registro público, sujeto así a la determinación de su autenticidad mediante el cotejo de firmas o cualquier otra forma de acreditar su validez en caso que surgiere controversia en relación con el mismo; y TOMADA EN SU LUGAR, anotación preventiva por el término legal de 120 días a favor de doña Julia Rosario viuda de Rosario de su título de compra, al folio y tomo antes indicados. La finca vendida se halla libre de toda carga o gravamen. Guayama, a catorce de abril de mil novecientos cuarenta y uno.''

Contra la transcrita nota se interpuso el presente recurso, sin que el registrador recurrido haya radicado alegato alguno en apoyo de la misma.

██ La primera cuestión suscitada por el registrador exige la interpretación de la sección 14 de la Ley Notarial según fué enmendada por la Ley núm. 7 aprobada en 23 de marzo de 1937, leyes de ese año (Leyes de 1936–37), pág. 135, que literalmente dice:

''Si los otorgantes o alguno de ellos no supiera o no pudiera firmar, lo expresará así el notario debiendo firmar y estampar sus iniciales uno de los testigos, escribiendo de su puño, en antefirma, que lo hace por sí como testigo y a nombre del otorgante, que no sepa o no

pueda verificarlo; *Disponiéndose, además, que el otorgante u otorgantes que no supieran o no pudieran firmar, estampará sus huellas digitales en cada hoja o plana."*

Impugnando la primera parte de la nota, arguye el recurrente que el dejar de estampar las huellas digitales calificado por el registrador de defecto insubsanable, a lo sumo sólo podría considerarse subsanable, ya que la recurrente, al celebrar el contrato de compraventa, no realizó acto alguno de enajenación sino de mera adquisición para lo cual podía ser representada por mandatario verbal, quien también en el mismo carácter pudo ratificar la escritura, circunstancias éstas que a su juicio son demostrativas del carácter de subsanable del defecto en controversia.

No vamos a detenernos en los méritos de esta argumentación. La recurrente se desvía de la verdadera cuestión en controversia, cual es determinar si el documento de que se trata constituye uno de los títulos sujetos a inscripción a que se contrae el artículo 3 de la Ley Hipotecaria que en lo pertinente prescribe:

"Artículo 3.—Para que puedan ser inscritos los. títulos expresados en el artículo anterior, deberán estar consignados *en escritura pública*, ejecutoria o documento auténtico, expedido por Autoridad Judicial, o por el Gobierno o sus agentes en la forma que prescriban los reglamentos."

La escritura motivo de este recurso fué otorgada el 15 de mayo de 1940. Sin embargo, tres años antes, como hemos visto, la sección 14 de la Ley Notarial antes citada había sido enmendada en el sentido de exigir que el otorgante que no sepa o no pueda firmar, estampe sus huellas digitales en cada hoja o plana.

No obstante la claridad del precepto legal antes citado, no se cumplió en este caso con el indicado requisito. En otras palabras, la firma de uno de los otorgantes no fué estampada en la forma exigida por el estatuto. Siendo ello así, como se dijera en *Banco Territorial* v. *Registrador,* 22

D.P.R. 584, 588, es como si dicha firma no existiera y por consiguiente se incurre en la nulidad expresada en la sección 20 de la Ley Notarial, que en lo pertinente dispone:

"Sección 20.—Serán nulos los instrumentos públicos:

"1.—.        .        .        .        .        .        .        .

"2.—.        .        .        .        .        .        .        .

"3.—...en que no aparezcan las firmas de las partes y testigos cuando deban hacerlo, y la firma, signo y rúbrica del notario."

Es incuestionable que el requisito legal de estampar las huellas digitales es de importancia suma ya que de ese modo, en lo que a otorgantes que no puedan o no sepan firmar se refiere, ha logrado el legislador dotar al instrumento público de un sello de incontrovertible autenticidad, con arreglo a los últimos dictados de la ciencia. De hecho, la huella digital sustituye con éxito a la firma.

Véanse por analogía, además del anteriormente citado, los casos de *Rodríguez* v. *Registrador,* 14 D.P.R. 738; *Villanueva* v. *Registrador,* 18 D.P.R. 831; y *Muñoz* v. *Registrador,* 25 D.P.R. 842.

██ Siendo nula la escritura en cuestión con arreglo a lo dispuesto en la sección 20 de la Ley Notarial, dicho documento no constituye el título inscribible que contempla la Ley Hipotecaria, y no constituyéndolo, actuó correctamente el registrador recurrido al denegar su inscripción y calificar de insubsanable el defecto.

El hecho de que en este caso sea la compradora y no el vendedor el que no sabe firmar, es inmaterial, pues aparte de que la ley no distingue, exigiendo ese requisito de todo otorgante que se halle en las condiciones indicadas, en el último de los casos citados, en que se trataba de un comprador que no podía firmar, se resolvió:

"Respecto al otro punto, está igualmente clara la ley; Saras comparece solamente como firmante a ruegos del comprador. No es en sentido alguno un testigo instrumental puesto que comparecieron otros dos en tal concepto. Es preciso que se cumpla estrictamente la Ley Notarial en este sentido."

■ Quizás convenga aclarar que la nulidad del título por no ajustarse a lo dispuesto en la ley, no conlleva necesariamente la nulidad del contrato de compraventa que puede ser perfectamente válido y obligatorio entre las partes, si concurren los tres requisitos enumerados en el artículo 1213 del Código Civil.

■ Pasaremos ahora a considerar los demás aspectos de la nota, ya que podrían presentarse de nuevo los poderes objetados por el registrador y suscitarse una vez más la cuestión que ahora nos ocupa.

Habiéndose autorizado en Nueva York los dos poderes otorgados a favor de los Sres. Campbell y Pope, ¿no era necesario para que dichos documentos surtieran efecto en Puerto Rico, en lo que a esta transacción respecta, que previamente hubieren sido protocolizados y anotados en el Registro de Poderes con arreglo a las secciones 3 y 4 de la ley de 8 de mayo de 1937 (Leyes de 1936–37, núm. 62 pág. 193)?

Los citados artículos dicen así:

"Artículo 3.—Será obligación de todo notario ante el cual se otorgue una escritura de constitución, modificación, ampliación, sustitución, renuncia o renovación de poder, remitir al Secretario del Tribunal Supremo de Puerto Rico, dentro de las cuarenta y ocho horas después de su otorgamiento, una notificación bajo su fe notarial, haciendo constar en la misma el nombre, o nombres del otorgante u otorgantes y testigos, fecha, número y naturaleza de la escritura con especificación de la persona a quien se le confiera, amplía, modifica o revoca el poder; en caso de sustitución de poder se consignará en dicha notificación el nombre de la persona sustituída y el del apoderado y cuando se trate de renuncia de poder el nombre del mandante; Disponiéndose, que será deber del Secretario del Tribunal Supremo acusar recibo a los notarios de dicha notificación y proceder inmediatamente después de recibirla a hacer las anotaciones correspondientes en el libro que determina el artículo 5 de esta Ley.

"Artículo 4. — Todo instrumento de constitución, modificación, ampliación, sustitución, renuncia o revocación de poder otorgado fuera de la Isla no surtirá efecto en Puerto Rico, a menos que sea previamente protocolizado en Puerto Rico, siendo obligación del

notario que verifique dicha protocolización dar cumplimiento a las disposiciones del artículo 3 de la presente Ley, tal y como si el documento motivo de la protocolización hubiera sido otorgado ante él.''

La necesidad de protocolizar y anotar dichos poderes para que a partir de la vigencia de ley de 8 de mayo de 1937 surtan efecto en Puerto Rico, es manifiesta; sin embargo, arguye la recurrente que como fueron otorgados con anterioridad a dicha ley, y la misma no contiene disposición alguna dándole efecto retroactivo, la protocolización es innecesaria.

No tiene razón la recurrente. Lo que dispone la ley es que a partir de su vigencia, documentos de esta índole dejarán de surtir efecto en Puerto Rico, a menos que se protocolicen y anoten previamente en el Registro de Poderes. Como la escritura de compraventa fué otorgada el 15 de mayo de 1940, o sea cerca de tres años después de regir la citada ley, claro es que para esa fecha los poderes no protocolizados ni anotados no podían surtir efecto en relación con dicha escritura. Sería correcta la contención de la recurrente si la escritura de compraventa se hubiera otorgado con anterioridad a la vigencia de la ley tantas veces mencionada.

No afecta nuestra conclusión el hecho de que se hayan otorgado actas de testimonios por exhibición de dichos poderes, pues sabido es que un testimonio por exhibición no equivale legalmente a un acta de protocolización. En esta última el notario une a su protocolo el documento que se le presenta para protocolar; en la otra, lo devuelve y sólo queda en el protocolo la copia extendida por el notario. Pero en el supuesto de que fuesen equivalentes, sin aceptarlo, siempre adolecerían dichos documentos del defecto de no aparecer previamente anotados en el Registro de Poderes como exige la ley.

Puesto que la ley no fija un plazo para protocolizar un poder, nada impide que en cualquier momento los documentos originales otorgados en Nueva York puedan ser presentados a un notario de Puerto Rico para su protocoliza-

ción, quien a su vez dará cumplimiento a la ley en lo que respecta al registro de poderes.

Los defectos señalados por el registrador bajo las letras B y C no existen a nuestro juicio. El otorgado a favor del Sr. Campbell que consta en el acta de testimonio por exhibición núm. 49, fué sometido a la Junta de Directores del citado Banco y aprobado por ésta en todas sus partes conforme resulta del acta que se transcribió por el notario que otorgó dicho poder en la ciudad de Nueva York. Habiendo transcrito el notario la resolución de la Junta de Directores en la escritura de poder, es innecesario presentar al registrador la resolución original aprobada por la Junta de Directores, aparte de que en ningún momento podría presentarse tal original y sí solamente la copia certificada que de dicha resolución hubiese expedido el Secretario de la corporación, pues el acta original permanece siempre en el libro de actas en la oficina de la corporación.

Los poderes se complementan. El de Mr. Campbell en su cláusula tercera contiene una limitación en el sentido de que para surtir efecto es necesario el concurso de otra persona que será designada por escrito de tiempo en tiempo, por el "chairman", presidente, primer vicepresidente (*senior vicepresident*), de dicho Banco, y el poder otorgado al Sr. Pope por el primer vicepresidente constituye la designación a que se refiere el de Mr. Campbell.

*Con la precedente aclaración, procede confirmar la nota recurrida.*