JUAN RODRÍGUEZ PÉREZ, demandante y apelado, *v.* JOSÉ MANUEL RODRÍGUEZ, demandado y apelante.

Núm. 8839.—*Sometido:* Noviembre 22, 1943. *Resuelto:* Enero 25, 1944.

R. *Cuevas Zequeira* y *Ortiz Toro & Ortiz Toro*, abogados del apelante; *Dubón & Ochoteco*, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

La sentencia apelada declaró inexistente el testamento que en inminente peligro de muerte, y ante cinco testigos, se alegó había otorgado José Rodríguez Pérez. Por la misma sentencia se anuló la resolución de la Corte de Distrito de Bayamón que había ordenado su protocolización en una notaría de esta ciudad.

El heredero instituído estableció el presente recurso y sin haberse elevado la prueba, el heredero legítimo, el apelado, solicitó su desestimación por frívolo. A ese efecto acompañó una transcripción de autos debidamente certificada por los abogados de ambas partes. Se opuso a la desestimación el apelante, alegando que las cuestiones envueltas son nuevas en esta jurisdicción y deben ser discutidas ampliamente en el recurso de apelación en su fondo.

█ Es práctica de este tribunal no considerar una moción sobre desestimación del recurso for frívolo, cuando para determinar la cuestión envuelta es preciso un estudio de toda la prueba y no se nos pone en condiciones de hacerlo no elevando la transcripción de evidencia. Pero las circunstancias del presente caso nos permiten prescindir de la transcripción de evidencia, ya que la transcripción de autos y la moción del propio apelante nos suministran suficiente información para resolver las cuestiones a que inmediatamente vamos a referirnos.

██ El demandante alegó varios motivos de nulidad en relación con el testamento. De ellos podemos tomar dos de los que entre otros sirven de fundamento a la sentencia apelada:

(*a*) Que los testigos del testamento no tenían la calidad de vecinos o domiciliados en el lugar del otorgamiento, es decir en el municipio de Río Piedras, y

(*b*) Que los nombres de dichos testigos no se consignaron en la memoria o nota que de las alegadas disposiciones orales del testador tomara el testigo Manuel Martínez Uriarte.

Cualquiera de dichos dos motivos, de existir, causa por sí solo la nulidad del testamento.

1. Obedece esta clase de testamentos, como los demás testamentos especiales en general, al deseo muy justificado de posibilitar y facilitar, el ejercicio de la facultad de testar, a las personas que se encuentren en las excepcionales circunstancias que contempla la ley, es decir, en inminente peligro de muerte y sin que se halle presente un notario. Pero como cuando el testamento surte efectos el testador no existe, es necesario que el Estado exija ciertas formalidades que eviten la impostura y el fraude, requiriéndose además que la inobservancia de esas formalidades tenga como sanción la nulidad del testamento.

A este efecto prescribe el artículo 650 del Código Civil que si el testador se hallare en inminente peligro de muerte puede otorgar el testamento ante cinco testigos idóneos sin necesidad de notario. Y el 636 impone la sanción de nulidad a todo testamento en que no se hayan observado las formalidades respectivamente establecidas en el Capítulo 1ro, tít. 3ro, del libro 3ro del Código Civil, que comprende desde el artículo 611 hasta el 674, inclusives, y lleva por título "De los Testamentos".

Uno de los requisitos que exige la ley es que los testigos sean idóneos, es decir, que tengan capacidad para ser testigos en los testamentos, y el artículo 630 prescribe que no pueden ser tales testigos los que no tengan la calidad de vecinos o domiciliados en el lugar del otorgamiento, salvo los casos exceptuados por la ley, excepción que no se aplica al presente caso.

Refiriéndose en general a la necesidad de que se cumplan las formalidades prescritas por la ley para asegurar la validez de los testamentos, dijo el Tribunal Supremo de España en su sentencia de primero de diciembre de 1927, 179 Jurisprudencia Civil 41, 52:

"Considerando que este Tribunal Supremo tiene declarado con reiteración e invariable conformidad suficientes para constituir doctrina legal aplicando los artículos 4º. y 678 del Código Civil, que no basta que sea indudablemente conocida la voluntad de un testador para que pueda prevalecer, si no resulta expresada en la forma requerida por la ley, porque son tan esenciales los requisitos que para la expresión de la última voluntad han establecido las leyes, así las anteriores como la precitada compilación, que la falta de cualquiera de ellos desvirtúa en absoluto la eficacia del testamento que se produjera o solemnizara con olvido de alguno de los requisitos que determinan su validez, aunque no exista, ni se haya por nadie suscitado duda de que contiene exactamente la postrimera voluntad del testador aquel testamento que no se haya otorgado en alguna de las formas y con todos los requisitos esenciales que en cada testamento han de concurrir, sin que sea lícito prescindir de ninguno de ellos."

Y en la de 17 de febrero de 1882 (48 J.C. 196) dijo también el mismo tribunal:

"Considerando que igualmente infringe la que se invoca en segundo lugar, puesto que la jurisprudencia de este tribunal tiene establecido que la circunstancia de la vecindad que exige la citada ley de la Novísima Recopilación para ser testigos en los testamentos, se refiere precisamente a los que pertenezcan al mismo distrito municipal en que se otorguen, cuya cualidad no concurría en los que se dicen testigos instrumentales del llamado testamento de Doña Rosa López Rivadeneyra, por cuanto éste se hizo en el distrito municipal del Valle de Oro y aquellos correspondían al de Alfoz de Castro de Oro, siendo por lo demás indiferente para el objeto de dar validez a dicho acto el que todos fueran feligreses de una misma parroquia; ''.                          .''

Véanse también las sentencias del mismo tribunal de 31 de diciembre de 1890 (68 J.C. 840), 20 de febrero de 1893 (73 J.C. 241) y 7 de octubre de 1904 (99 J.C. 91) citadas por

la corte sentenciadora, en las cuales se anulan testamentos otorgados en inminente peligro de muerte por el hecho de que todos o algunos de los testigos no eran vecinos o domiciliados en el municipio del otorgamiento.

Los comentaristas del Código Civil español citados por el apelado en su alegato en apoyo de la desestimación convienen también en que la inobservancia de las formalidades exigidas por la ley en relación con los testamentos los invalida y anula. No vamos a transcribir, por considerarlo innecesario, las opiniones de los distintos comentaristas. Bastará citar algunos de ellos. 5 Manresa, Comentarios al Código Civil Español, 571 *et seq.;* 12 Scaevola, Código Civil, 283, 286.

En Louisiana el Código Civil autoriza un testamento especial de la clase del que nos ocupa, el cual puede otorgarse ante cinco testigos residentes en el condado (*parish*) donde se otorga el testamento, sin necesidad de notario, o ante siete testigos no residentes en dicho sitio. Y el artículo 1595 del mismo Código, prescribe que la inobservancia de las formalidades prescritas para los testamentos los anula. Aplicando dichos preceptos legales, el Tribunal Supremo de Louisiana, en el caso de *Soileau* v. *Ortego* (1938) 180 So. 496, citado por la corte inferior, anuló un testamento nuncupativo ante cinco testigos, porque dos de ellos residían en un condado distinto de aquel en que se otorgó el testamento.

En el presente caso, no dos, sino todos los testigos, residían fuera del municipio de Río Piedras. Siendo ello así, tenemos que llegar a la irresistible conclusión de que el testamento otorgado por José Pérez Rodríguez es nulo. No procediendo, por consiguiente, otra sentencia que no sea la apelada, a ningún fin práctico conduciría dejar subsistente el recurso, para tener que llegar después a la misma conclusión a que llegamos ahora mediante la moción de desestimación.

*Por lo expuesto, huelga considerar el segundo motivo de nulidad, debiendo declararse con lugar la moción del apelado y desestimarse el recurso por frívolo.*

El Juez Asociado Sr. Snyder no intervino.