Pablo y Pedro Canales Rosa y José Manuel Canales López, menor éste representado por su madre con patria potestad Belén López, demandantes y apelados, *v.* Tirsa Aldea Rodríguez, Ana Siria y Lobanda Canales, demandados y apelantes.

Núm. 9835.—*Sometido:* Enero 10, 1949. *Resuelto:* Mayo 12, 1949.

*Luis Mendín Sabat,* abogado de los apelantes; *Gustavo L. Marrero Ledesma,* abogado de los apelados.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

El día 24 de octubre de 1939 don Jaime Canales Orozco otorgó testamento abierto ante el notario Andrés Mena Latorre de Caguas por la escritura número 316, al final de la cual dicho notario hizo constar lo siguiente:

"Presentes a este acto el testador y los testigos al principio mencionados, yo el notario procedo a la lectura en alta voz de este testamento, por haber renunciado a leerlo por sí el testador y los testigos, de cuyo derecho fueron enterados y el testador, viéndolo, oyéndolo, entendiéndolo los testigos declara que lo escrito y leído refleja bien y fielmente su voluntad, sin que haya necesidad de variar nada de lo consignado en este testamento, *por lo cual lo firman los testigos y no el testador porque éste manifestó no saber firmar, haciéndolo a sus ruegos el testigo instrumental* Don Pastor Batista. Ante mí el notario, que del conocimiento personal, edad, estado, profesión y vecindad del testador de haberse practicado en un solo acto todas las formalidades prevenidas por la Ley, y de cuanto queda relacionado en este instrumento público extendido en dos hojas de papel con inclusión del presente, doy fe. _ _ _ _ _ _ _ _ _ _ (Firmado)—*Por mí como testigo y a ruegos de Jaime Canales Orozco,* Pastor Batista.—José C. Esterás.—Emilio Puig.—(Signado, firmado y sellado)—Andrés Mena. *Constan en el original las iniciales del testigo que firmó a ruego del otorgante y las impresiones digitales de este último._ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ :*" (Bastardillas nuestras.)

El testador falleció el día 1ro. de junio de 1944 y el 10 de julio de 1947 dos hijos legítimos de su primer matrimonio y un nieto, hijo de otro hijo legítimo fallecido, radicaron la presente acción en contra de la viuda y dos nietas, a quienes el testador había dejado varios legados, alegando que el testamento está viciado de nulidad "porque en el mismo aparece que don Jaime Canales Orozco, no sabía firmar, haciendo (sic) por él y a su ruego el testigo instrumental, Pastor Batista, y la verdad es que don Jaime Canales Orozco, antes de otorgar testamento, en el momento de otorgar testamento y después de otorgar testamento, sabía firmar, leer y escribir. Además a pesar de que en el testamento se dice

que el testamento se otorgó en un solo acto, la verdad es que no fué otorgado en un solo acto.''

Las demandadas contestaron negando los hechos de la demanda y alegaron ciertas defensas y celebrado el juicio correspondiente, la corte inferior declaró con lugar la demanda y anuló el testamento por considerar que, en su otorgamiento, se había infringido el párrafo tercero del artículo 645 en relación con el 636 del Código Civil, (ed. 1930).(¹)

Las demandadas apelaron y en este recurso sostienen que la corte inferior erró al declarar nulo el testamento.

La prueba testifical presentada por las partes fué contradictoria en cuanto al hecho de si don Jaime Canales Orozco sabía o no firmar. La de los demandantes fué al efecto de que él sabía leer y escribir, aunque poco, y su hijo Pedro Canales declaró que él fué quien le enseñó a firmar y a escribir.. Sin embargo, la demandada Tirsa Aldea Rodríguez, declarando como testigo de los demandantes, aun cuando admitió que cuando ella se casó con Jaime Canales Orozco él firmó el acta matrimonial, afirmó que ''él no podía firmar últimamente porque estaba ya un hombre de setentiséis años y tenía incapacidad física; ya no podía sostener . . .'', tenía incapacidad física ''para escribir.'' (Pág. 25, la Transcripción de Evidencia.) Además, el propio de-

(¹)Estos artículos disponen:

''Artículo 645.—El testador expresará su última voluntad al notario y a los testigos. Redactado el testamento con arreglo a ella y con expresión del lugar, año, mes, día y hora de su otorgamiento, se leerá en alta voz, para que el testador manifieste si está conforme con su voluntad. Tanto el testador como los testigos podrán leer por sí mismos el testamento, debiendo el notario advertirles de éste su derecho.

''Si el testador y los testigos estuviesen conformes, será firmado en el acto el testamento por uno y por otros que puedan hacerlo.

''Si el testador declara que no sabe o que no puede firmar, lo hará por él y a su ruego, uno de los testigos instrumentales u otra persona, dando fe de ello el notario. Lo mismo se hará cuando alguno de los testigos no pueda firmar.

''El notario hará siempre constar que, a su juicio, se halla el testador con la capacidad legal necesaria para otorgar testamento.''

''Artículo 636.—Será nulo el testamento en cuyo otorgamiento no se hayan observado las formalidades respectivamente establecidas en este capítulo.''

mandante Pedro Canales, declarando como testigo de las demandadas, al mostrársele un documento privado sobre compraventa de un predio de terreno y en el cual él aparece firmando por su padre, manifestó: ". . . Él muchas veces estuvo enfermo y no podía firmar y me llamaba para firmar documentos." (Pág. 13, 2ª. Transcripción de Evidencia.)

La prueba documental fué, si cabe, más contradictoria aún. La de los demandantes consistió en una serie de documentos en los cuales consta la firma de Jaime Canales Orozco. El más antiguo es el acta de matrimonio de Jaime Canales Orozco y Carmen Belén López Rodríguez, su primera esposa, firmado el 3 de enero de 1925. Luego un documento privado firmado el 19 de abril de 1931. También varias escrituras públicas otorgadas por Jaime Canales Orozco ante distintos notarios, las cuales aparecen firmadas por él. Tienen una particularidad, sin embargo, y es que todas fueron otorgadas entre las fechas comprendidas del 18 de mayo de 1927, la primera, al 10 de febrero de 1937, la última. También documentos judiciales en que aparece la firma de Jaime Canales Orozco, todos comprendidos entre el 7 de abril de 1926 al 10 de octubre de 1936.

Es importante no olvidar la fecha en que se otorgó el testamento abierto: *24 de octubre de 1939*. Toda la prueba documental de los demandantes en que aparece la firma de Jaime Canales Orozco es de fecha anterior al 24 de octubre de 1939.

Frente a esa prueba, la de las demandadas consistió en el documento privado, otorgado en 5 de diciembre de 1913, en el cual aparece el demandante Pedro Canales, firmando por su padre, y en una serie de documentos públicos ante distintos notarios, otorgados por Jaime Canales Orozco y en los cuales hace constar que no sabe firmar y lo hace por él un testigo, excepto en uno en el que hace constar que no firma por imposibilidad física y firma un testigo por él. También tiene una particularidad y es que todos fueron

otorgados entre las fechas comprendidas del 15 de febrero de 1938, el primero, al 11 de mayo de 1943, el último. Es decir, desde la fecha en que otorgó su testamento abierto el 24 de octubre de 1939 (y aun desde antes de dicha fecha), Jaime Canales Orozco no volvió a otorgar ningún documento, que sepamos por lá prueba, el cual hubiese firmado. Por el contrario, en todos, con posterioridad al 24 de octubre de 1939, hizo constar que no sabía firmar y en uno que no lo hacía por imposibilidad física. Estas afirmaciones suyas en las escrituras están corroboradas por la prueba testifical de ambas partes, que tiende a demostrar que aun cuando en una época de su vida, Jaime Canales Orozco—sabiendo por lo menos firmar—(²) ponía su firma en los documentos que otorgaba, desde cierta fecha, febrero 15 de 1938, en adelante no aparece firmando ningún documento debido a que, por su edad avanzada e imposibilidad física, no podía hacerlo.

Bajo todas estas circunstancias, ¿debe sostenerse que el testamento otorgado por Jaime Canales Orozco el 24 de octubre de 1939 es nulo? Creemos que no.

Los casos de *Ex parte Planis* v. *Pueblo,* 42 D.P.R. 689; *Rodríguez* v. *Rodríguez,* 62 D.P.R. 885 y *Pacheco* v. *Sucn. Pacheco,* 66 D.P.R. 796, citados por la corte inferior, por sus hechos, son fácilmente distinguibles del presente. En el primero resolvimos que un documento mecanografiado por otra persona y únicamente firmado por el testador no puede considerarse como un testamento ológrafo. En el de *Rodríguez* sostuvimos la nulidad de un testamento otorgado en inminente peligro de muerte cuando todos o algunos de los testigos no tenían la condición de vecinos o domiciliados en el municipio del otorgamiento, y en el de *Pacheco* resolvimos que un testamento abierto, en el cual no se consigne expresamente la hora de su otorgamiento, es nulo. En todos estos casos,

---

(²)La prueba de las demandadas, no contradicha, demuestra que Jaime Canales Orozco era un agricultor y además, como espiritista, se dedicaba a dar ''recetas'', las cuales eran redactadas por una de sus nietas por no saber él escribir.

o bien el testador o el notario no dieron cumplimiento, en su otorgamiento, a las formalidades respectivamente establecidas en el Capítulo I del Título III del Libro Tercero del Código Civil (ed. 1930), por las cuales el testamento es nulo de acuerdo con el artículo 636 de dicho Código.

En el presente caso el notario dió cumplimiento a todas las formalidades exigidas para que el testamento abierto de Jaime Canales Orozco sea válido. Hizo constar, por haber manifestado el testador que no sabía firmar, que lo hacía por él, a su ruego, uno de los testigos instrumentales. Hizo constar además, que el testador había estampado sus huellas digitales, dando cumplimiento así a la sección 14 de la Ley Notarial, según fué enmendada por la Ley núm. 7 aprobada el 23 de marzo de 1937 (Leyes de 1936–37, pág. 135), que dispone: .

" 'Sección 14.—Si los otorgantes o alguno de ellos no supiere o no pudiere firmar, lo expresará así el notario, debiendo firmar y estampar sus iniciales uno de los testigos, escribiendo de su puño, en antefirma, que lo hace por sí como testigo y a nombre del otorgante, que no sepa o no pueda verificarlo; *Disponiéndose, además,* que el otorgante u. otorgantes que no supieren o no pudieren firmar, estamparán sus huellas digitales en cada hoja o plana.' "

Hemos resuelto en el caso de *Rosario* v. *Registrador,* 59 D.P.R. 428, 432, que:

" '*   *   *   *   *   *   *

"Es incuestionable que el requisito legal de estampar las huellas digitales es de importancia suma ya que de ese modo, en lo que a otorgantes que no puedan o no sepan firmar se refiere, ha logrado el legislador dotar al instrumento público de un sello de incontrovertible autenticidad, con arreglo a los últimos dictados de la ciencia. De hecho, la huella digital sustituye con éxito a la firma."

Es cierto que el hecho de que en un testamento abierto se haga constar que el testador no lo firmó por haber manifestado que no sabía firmar, no significa que no pueda atacarse la validez de dicho documento demostrando, como cuestión de hecho, que efectivamente el testador sabía firmar y que, al

no firmar el testamento indicó con esa actuación, que no quería firmarlo. Esta es la conclusión a que llegan tanto Manresa como Scaevola al comentar el artículo 695 del Código Civil Español, equivalente al 645 de nuestro Código. Empero, Scaevola, comentando esta situación, se expresa así:

". . . Es decir, el que expresa que no sabe o no puede firmar, *sabiendo y pudiendo,* indica bien claramente que no quiere firmar, y en ese supuesto, el caso viene a ser equivalente al de un testamento que se encuentre sin firma del testador. Sin embargo, es posible acontezca lo que prevé un fallo del Tribunal de casación francés, de 5 de mayo de 1831, el cual contiene la teoría de que, si bien es general que al declararse que no se sabe firmar cuando realmente se sabe, se afirma en otros términos que no se quiere, hay que reconocer también que con frecuencia un sencillo aldeano o labrador que, no sabiendo leer ni escribir, ha puesto algunas veces su nombre suscribiendo ciertos actos escritos, puede considerar muy de buena fe el decir que no sabe firmar; en tal caso, el testamento ha sido siempre mantenido como obra de la voluntad del testador, libre y espontáneamente expresada.

"Tratadistas hay que reconocen que si el testador, cuando hizo el testamento estaba imposibilitado para suscribirlo, ya por debilidad o por parálisis de la mano, y que tal incapacidad había sido reconocida en el otorgamiento de actos auténticos parecidos anteriormente celebrados, según la mente del testador, debe tomarse la locución de *no saber* como equivalente a la otra de *no poder,* tanto más cuando consta que aquél trataba de hacer un testamento serio y válido y cuando tal declaración está dicha con buena fe y sin ánimo de proferir una mentira. He aquí cómo otros comentaristas confirman la observación que anteriormente hemos aducido, de que la intención del testador, preferente norma en la interpretación de las cláusulas testamentarias, es también la que ha de resolver las dificultades originadas por la carencia de firma del testador en el testamento público, siempre que no se halle suplida tal falta en debida forma." (Primeras bastardillas nuestras.) 12 Scaevola, Código Civil, pág. 432.

Se asemeja el de autos al caso resuelto hace más de cien años por la Corte de Casación de Francia, citado por Scaevola bajo el Código Civil de dicha nación, que contiene disposición

similar al nuestro.(³) Aquí se trata de un agricultor que aprende a escribir su firma y que habiéndola puesto en varios documentos, luego no lo hace, manifestando que no sabe o que está imposibilitado de hacerlo. El "no saber", en un caso como éste, equivale a "no poder", ya que la prueba justifica que lleguemos a esa conclusión. No se trata de un caso en que el único documento en que el otorgante hace constar que no sabe firmar es su testamento y todo el resto de la prueba, tanto testifical como documental demuestra sin contradicción, que sabía escribir o por lo menos firmar, y que como cuestión de hecho a través de su vida, siempre firmó todos los documentos públicos y privados que otorgó. Aquí nos confrontamos con el caso de un analfabeto que aprende a escribir su nombre y durante varios años consecutivos y hasta determinado año—1938—firmó los documentos en que intervino como otorgante, pero que, desde ese año en adelante y hasta su fallecimiento, no volvió a firmar ningún documento, haciendo constar en ellos que no sabía o estaba imposibilitado físicamente para hacerlo, firmando por él un testigo y estampando el otorgante en ellos, en cumplimiento de la ley, sus huellas digitales. Bajo estas circunstancias especiales, las huellas digitales estampadas en el testamento abierto otorgado el 24 de octubre de 1939, no impugnadas en forma alguna, sustituyen con éxito, en unión a la firma del testigo instrumental, la firma del testador. *Rosario* v. *Registrador*, supra. La falta de la firma del tes-

---

(³)Véase 5 Planiol–Ripert, Derecho Civil Francés, págs. 594–596, sección 565, en cuyo comentario se dice:

". . . La jurisprudencia interpreta la declaración falsa como negativa a firmar, que produce la nulidad del testamento (8), salvo que por *circunstancias especiales* se pueda interpretar en otro sentido aquella declaración (9)." (Bastardillas nuestras.)

En el escolio (9), a la pág. 596, además de citarse el caso antes mencionado por Scaevola, se citan varios otros en los que la "circunstancia especial" que sirvió de base para declarar válido el testamento fué: ". . . si el testador quiere indicar una imposibilidad física actual para firmar, diciendo que no sabe firmar. . ."

tador Jaime Canales Orozco fué suplida en debida forma y debe prevalecer su última voluntad en él expresada.

En cuanto al segundo motivo de nulidad alegado en la demanda, es decir, que el testamento no fué otorgado en un solo acto, no se presentó prueba para sostenerlo.

*Debe revocarse la sentencia apelada y dictarse otra, declarando sin lugar la demanda, con costas.*