PONCE REAL ESTATE CORP., EDISON PUERTO RICO STORES, INC., recurrentes, *v.* REGISTRADOR DE LA PROPIEDAD DE PONCE, recurrido.

*Número:* 1395    *Resuelto:* 7 de febrero de 1963

*Práxedes Álvarez Leandri,* abogado de los recurrentes; *El Registrador* recurrido compareció por escrito.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

El Juez Asociado Señor Santana Becerra emitió la opinión del Tribunal.

Ponce Real Estate Corp. como entidad arrendadora y Edison Puerto Rico Stores, Inc. como arrendataria convinieron el arrendamiento de un solar sito en la Plaza Muñoz Rivera de Ponce. La arrendadora se comprometió a erigir un edificio de dos plantas de unos 6,000 pies cuadrados a ser construido según especificaciones aprobadas por ambas partes, el cual se dedicaría a una tienda de primera calidad para la venta de mercancía al por menor. El término del arrendamiento se fijó en 10 años comenzando a la terminación y entrega de dicho edificio, sujeto a prórrogas a opción de la arrendataria por dos períodos de cinco años consecutivos. Se convino un canon de $15,500 anuales. Al final del documento se hace constar que en testimonio de ello las partes han otorgado el mismo por sus oficiales debidamente autorizados, y sigue: "Ponce Real Estate Corp., Por: —(f) Frank Vilariño. —Edison Puerto Rico Stores, Inc., Por: —(f) Harry Edison. —Attest: —Eric Newman, Secretario. —Se encuentra estampado el sello de la Edison Puerto Rico Stores, Inc., Affidávit Núm. 637. —Suscrito ante mi por Mr. Frank Vilariño, mayor de edad, casado, comerciante y vecino de Ponce, como Secretario de Ponce Real Estate Corp., a quien conozco personalmente, en Ponce, Puerto Rico, hoy 7 de diciembre de 1960.— (f) P. Álvarez Leandri.—Práxedes Álvarez Leandri—Notario Público. Estado de Missouri, Ciudad de St. Louis: SS.—Hoy día 23 de diciembre de 1960 comparecieron ante mí personalmente Harry Edison y Eric P. Newman por mí conocidos quienes debidamente juramentados manifestaron que son Presidente y Secretario de la Edison Puerto Rico Stores, Inc., y que el sello estampado en dicho documento es el sello corporativo de dicha corporación y que dicho documento se firmó y selló en representación de dicha corporación por autoridad de su Junta de Directores y dichos Harry Edison y Eric P. New-

man reconocieron dicho documento como el libre acto y otorgamiento de dicha corporación." (Firma Ann Barrett, Notario del Condado de St. Louis.)

En 16 de enero de 1961 el anterior contrato de arrendamiento así otorgado y firmado se protocolizó por el Notario Roberto Davis Vázquez a petición de Frank Vilariño quien compareció como única parte en la escritura de protocolización. El documento se presentó al Registro conjuntamente con otros complementarios y el Registrador se negó a inscribirlo anotando lo siguiente:

"Denegado este documento, con vista de varios complementarios, y en su lugar tomada anotación preventiva por el término legal de ciento veinte días, por observarse el defecto insubsanable de ser el mismo contrario a los Artículos tres de la Ley Hipotecaria y cincuenta y cincuenta y uno de su Reglamento, ya que todo documento otorgado en Puerto Rico que pretenda producir inscripción en el Registro de la Propiedad debe ser un documento público; no siendo la affidávit el documento público que contempla la ley y no produciendo la protocolización que de la misma se haga por una de las partes los efectos de elevarla a escritura pública, todo ello al folio 130 del tomo 712 de Ponce, finca número 2161 cuadruplicado, anotación letra A. Dicha finca se halla gravada con una hipoteca por $100,000 a favor del portador por endoso de un pagaré y sujeta a la anotación de arrendamiento objeto de la presente. Ponce, julio 28 de 1961. (f) Miguel Ramón Aguiló, Registrador."

En este recurso gubernativo las partes contratantes impugnan la nota del Registrador sosteniendo que cometió error (1) al consignar que el documento presentado para inscripción era contrario a los Arts. 3 de la Ley Hipotecaria y 50 y 51 de su Reglamento y (2) al consignar en su nota que la protocolización del contrato de arrendamiento suscrito bajo affidávit no produce los efectos de elevar el documento a escritura pública.

Dispone el Art. 1232 del Código Civil (ed. 1930) que deben constar en *documento público:* (1) los actos y contratos que tengan por objeto la creación, trasmisión, modifica-

218

ción o extinción de derechos reales sobre bienes inmuebles; (2) los *arrendamientos* de estos mismos bienes por seis o más años, siempre que deban perjudicar a tercero. Documento público, según el Art. 1170 del propio Código, es el autorizado por un notario o empleado público competente, con las solemnidades requeridas por la ley. El Art. 1439 estatuye que con relación a terceros, no surtirán efecto los arrendamientos de bienes raíces que no se hallen debidamente inscritos en el Registro de la Propiedad. Y dispone el Art. 2 de la Ley Hipotecaria que se inscribirán. . . . (5) los contratos de arrendamiento de bienes inmuebles por un período que exceda de seis años, o . . . etc. . . . ; y el Art. 3, que para que puedan ser inscritos los títulos del Art. 2 anterior, deberán estar consignados en escritura pública, ejecutoria o documento auténtico, expedido por autoridad judicial, o por el Gobierno o sus agentes en la forma que prescriban los reglamentos. Título, para todos los efectos de la inscripción, se entiende que es el *documento público y fehaciente*, entre vivos o por causa de muerte, en que funde su derecho sobre el inmueble o derecho real la persona a cuyo favor deba hacerse la inscripción misma, según reza el Art. 50 del Reglamento Hipotecario, y—Art. 51—se consideran documentos auténticos a los efectos de esta ley los que, sirviendo de títulos al dominio o derecho real, estén expedidos por el Gobierno o por autoridad o funcionario competente para darlos, y deban hacer fe por sí solos. Comenta Morell que el concepto *en que funde su derecho sobre el inmueble o derecho real la persona a cuyo favor debe hacerse la inscripción* marca el carácter esencial del título *a los efectos de la Ley Hipotecaria* "diferenciando el documento público a que esa ley se refiere, de cualquier otro documento público extraño a la inscripción, o presentado sólo como complementario, accesorio o secundario, para acreditar hechos referentes a derechos inscribibles o ya inscritos." [1]

---

[1] Morell, *Legislación Hipotecaria*, Tomo 1, pág. 558.

A tenor de las disposiciones de ley transcritas y de nuestra jurisprudencia interpretativa de las mismas, no habría lugar a dudas en cuanto a que no era inscribible en el Registro el contrato mismo de arrendamiento aludido, en la forma original en que fue otorgado. *Martínez v. Registrador de Mayagüez*, 30 D.P.R. 85; *Sucs. de Andreu y Co. v. Registrador de la Propiedad*, 20 D.P.R. 423; *Delgado v. El Registrador de Caguas*, 22 D.P.R. 125; *Pietri v. El Registrador*, 22 D.P.R. 729; *Becerril, et al. v. Post, et al.*, 22 D.P.R. 732; *Brac v. El Registrador*, 23 D.P.R. 749; *Berrizbeitía v. Registrador*, 40 D.P.R. 611; Cfr: *Rosario v. Registrador*, 59 D.P.R. 428. Dice la Ley de Evidencia en su Art. 45 que son documentos públicos los que se determinan en el Art. 1184 del Código Civil [1911]—1170 ed. 1930 antes transcrito—y el Art. 46, que son privados todos los demás documentos. La cuestión realmente a considerar es si dicho contrato de arrendamiento que es un documento privado se hace inscribible *como el título en que fundan sus derechos* las partes contratantes por razón de su archivo en el protocolo de un notario. Esto nos trae a considerar, en orden al Registro, la categoría de un acta notarial de protocolización como base para la inscripción de uno de los títulos —derechos—a que se refiere el Art. 2 de la Ley Hipotecaria que, según el Art. 3, deberán consignarse, para que produzcan inscripción, en escritura pública, ejecutoria o documento auténtico. (²)

■ Don Ignacio de Casso y Romero y Don Francisco Cervera y Jiménez-Alfaro en su *Diccionario de Derecho Privado*, Tomo I (1954) pág. 1806, nos sintetizan algunos conceptos de la *escritura pública*. Critican hasta cierto punto en el sentido estricto la definición de la Real Academia de la Lengua, "instrumento público, firmado a presencia de testigos por la persona o personas que lo otorgan, de todo

---

(²) No debe preocuparnos ahora ni la ejecutoria, por autoridad judicial, ni el documento auténtico, por autoridad gubernamental, por no ser pertinente al problema aquí envuelto. Morell, Tomo I, págs. 560–584; Galindo y Escosura, *Legislación Hipotecaria*, págs. 479–486.

lo cual da fe el Notario", considerando que en la legislación y en la doctrina se distinguen dos clases de instrumentos públicos: la *escritura* y el *acta*. Nos dan la definición de Sancho Tello de la escritura pública como "la original redactada por el Notario *sobre el acto sometido a su autorización*, firmada por los otorgantes, por los testigos instrumentales y de conocimiento, en su caso, y firmada y signada por el mismo Notario." También la de Azpeitia, que la define como el "original autorizado por Notario, en que consta la esencia de un contrato o de un acto jurídico intervivos o de última voluntad, refiriéndose, por tanto, *siempre a una declaración de voluntad.*" Continúan diciéndonos Casso y Cervera que Fernández Casado, a quien sigue López Palop, centra la definición de la escritura pública en su *teleología de crear, modificar o extinguir relaciones jurídicas*, y siguen: "Aguado afirma que la *escritura* contiene un negocio jurídico, es decir, una declaración de voluntad (unilateral, bilateral o plurilateral) tendente a producir un efecto jurídico. *Se diferencia, por su contenido, del acta en que la materia propia de ésta es simplemente la narración de un hecho.* Orientándose en el mismo sentido, declara el Art. 144 del R.N. vigente, en sus párrs. 2º y 3º, que el contenido propio de las escrituras públicas son las declaraciones de voluntad, los actos jurídicos que impliquen *prestación de consentimiento* y los *contratos* de todas clases. La órbita propia de las *actas* notariales afecta exclusivamente a *hechos* jurídicos que, por su índole peculiar, *no pueden calificarse de actos o contratos.*" Más adelante exponen: "Los requisitos denominados por la doctrina internos, de la *escritura* pública, coinciden con los *esenciales* del negocio jurídico contenido. Sujetos, objeto y causa, serán, pues, los comunes a *éste* y a *aquélla.*"

Refiriéndose específicamente ahora al acta notarial, (p. 153) los señores Casso y Cervera nos dan la definición de Novoa como el "documento público autorizado por Notario, en el que, a requerimiento de parte con capacidad intelectual sufi-

ciente, se hace constar un hecho que presencie o le conste al Notario, *que no puede ser objeto de contrato*, y cuyo recuerdo conviene conservar en forma auténtica." Continúan: "Velasco, por su parte, da una definición de acuerdo con los Arts. 143 (ahora 144), párr. 1º y 3º, y 197, ap. 1º del RN. del 1935: instrumento público que afecta *exclusivamente a hechos*, y circunstancias de ellos, que presencian o les constan a los notarios y que, por su índole peculiar, no pueden calificarse de *actos o contratos*." Refiriéndose a sus características nos dicen (1) que es un instrumento público, al igual que la propia escritura, (2) autorizado por Notario competente, y (3) que se refiere a *hechos jurídicos;* y que esta última "es la característica fundamental, la que delinea el contenido o substancia de las *actas* frente a las *escrituras*. Porque, como dice Azpeitia, a pesar de la distinción, consolidada dentro de la técnica española, de escrituras matrices por un lado y actas notariales, por otro, la palabra escritura matriz tiene una acepción lata, dentro de la cual se comprenden también las actas notariales, instrumentos públicos, porque, en efecto, las actas tienen una exteriorización primaria que es el original, siempre matriz, y que también es esencialmente escritura. De esta igualdad genérica deriva la necesidad de la *distinción substancial y específica*, y, por ello, la técnica notarial reserva el nombre de escrituras matrices para las que *exteriorizan un acto jurídico que comprende una declaración de voluntad*, dejando fuera de tal denominación a los demás documentos notariales. Hay, pues, dentro de la realidad jurídica que constata el Notario, dos clases de *hechos:* unos, cuya constitución depende de la voluntad del sujeto que promueve el ministerio notarial *y están sometidos al dictamen técnico del Notario* que guía su forma plástica y los crea, propiamente, *en el otorgamiento*, y de ahí que en ellos se hable de *otorgantes;* otros hechos entran en la esfera jurídica sin intervención de los sujetos que instan la actividad notarial; la sanción notarial *se limita* en ellos *a fijarlos al sujeto agente*, el cual sólo actúa requiriendo,

promoviendo la función notarial y, por ello, se habla en estos casos de *requirentes*. En las dos intervenciones notariales, los sujetos comparecen, pero el hecho, en los casos primeros, *se crea y se constata* y, en los últimos casos, *sólo se constata;* aquéllos pueden llamarse *actos jurídicos*, éstos solamente *hechos jurídicos."* . . . . . Tratando sobre la importancia del *acta* como instrumento, aun cuando consideran su valor de *mera constancia*, comentan Casso y Cervera que predomina en estos casos, sobre el aspecto del Notario como *técnico del Derecho*, su aspecto de funcionario público, y que como afirma Velasco, el Notario es realmente, no sólo el funcionario, sino el único sujeto del *acta*, el que ha de expresar la verdad escueta de lo que vea, presencie o suceda, se oponga o no al interés del requirente o interesado; que lo esencial es el Notario, y así nada interesa que el requirente sea o no conocido de él y tenga o no capacidad, actúe en una u otra forma, por sí o como representante, esté conforme o en desacuerdo y firme o no; porque todo ello, que *en relación* o con *el nacimiento de un negocio* reviste extraordinaria importancia, no la tiene ni significa nada cuando se trata de *fijar* un hecho y sus circunstancias, sean las que sean, siempre que el Notario pueda apreciarlas por sí. Y que siendo la intervención notarial de tanta trascendencia, Fernández Casado hace notar que el Notario deberá proceder al redactar las actas con la imparcialidad más absoluta, "no aseverar hechos de que no esté completamente cierto, y limitarse a los hechos sensibles, *sin inducir causas ni deducir consecuencias."* Hasta aquí parte de la útil y precisa síntesis que de tan abarcadora materia nos exponen en su Diccionario los señores Casso y Cervera, de esencial aplicación al problema que nos ocupa. (Hay énfasis del original y énfasis suplido.)

La acepción del vocablo "título" según se usa en el Art. 50 del Reglamento, sinónimo de documento o instrumento público, no tiene precisamente idéntico significado del "título" bajo el Art. 2 de la Ley que, acorde con el Art. 3,

ha de consignarse para su inscripción en *escritura* pública. Bajo el Art. 2 se emplea como el acto jurídico o causas de adquirir y poseer, que dice Morell; [3] el derecho mismo o relación jurídica, decimos, que se crea, nace, modifica o se extingue, en fin, el negocio jurídico en que fundan las partes sus derechos. Por supuesto, del concepto del Art. 50 del Reglamento no está excluida la *escritura*, como documento público que es, y fehaciente, con lo cual hay perfecta concordancia entre el mismo y el Art. 3 de la Ley, aunque no está limitado tampoco a la *escritura*. A este respecto, el acta notarial de protocolización de un documento privado constituye indudablemente un documento o instrumento público fehaciente con garantía de autenticidad y de fe pública del hecho que la motiva, cual es el archivo en el protocolo del notario de ese documento, y da fe pública de que según lo transcribe el notario en la copia del acta que expide, es fiel constancia del documento archivado. No obstante, tal acta no constituye la *escritura* pública en que, fundando sus derechos las partes contratantes se constituye, a la par que se consigna y se exterioriza bajo fe notarial, una declaración de voluntad otorgada ante notario y con intervención de la función del Notario; el nacimiento de un negocio jurídico o derecho o el título (en el concepto del Art. 2) ; o citando a Fernández Casado, no es el documento en el que se crea, modifica o se extingue una relación jurídica. Los contratos no hacen fe respecto a terceros si no se otorgan ante notario. [4]

---

[3] Morell, Tomo I, págs. 320-551, Roca Sastre, *Derecho Hipotecario*, Tomo II, págs. 146 y ss.

[4] No quiere decir que el acta notarial, que ha sido caracterizada en la doctrina como un instrumento público *especial*, nunca ha de surtir efecto en el Registro o producir inscripción o anotación, por lo regular como instrumento auxiliar, complementario o aclaratorio, y en aquellos casos y para aquellos fines permitidos por la ley o por el reglamento. Cfr. José María Mustapich, *Tratado Teórico y Práctico de Derecho Notarial* (1955) Tomo I, "Escrituras y Actas", págs. 159-172; Morell, Tomo I, pág. 572. Véase la enumeración de Roca Sastre, *op. cit.*, pág. 156 *et seq.*

)

En significativa concordancia con el atributo de la fe pública del Registro, que en sí lleva los atributos de la autenticidad, la legalidad y la garantía, —a tercero—, está la misión del Notario, único funcionario bajo nuestro ordenamiento de ley que, cuando de actos y contratos privados y voluntarios se trata, extrajudiciales, o de actos fuera de la competencia de los órganos políticos y administrativos del gobierno ejerce, por delegación, esa parte de la soberanía del Estado que consiste en la fe pública: que todos los demás individuos en la sociedad acepten y crean un acto o contrato privado sin haberlo presenciado.

A tono con esta significativa concordancia el Notario, que como dicen Las Partidas, Part. 3, tit. XIX, ley III "et son como testigos públicos en los pleytos et en las posturas que los homes facen entre sí", no es un mero testigo que pasivamente presencia una declaración de voluntad y la autentica. Juega un papel más trascendental en el nacimiento del derecho, relación o negocio jurídico entre las partes, que queda consignado en el instrumento. González Palomino nos caracteriza la actuación del Notario como la del "*pedagogo* de la voluntad, ayudando a formarse perfecto el consentimiento: formando y afirmando la voluntad". Sanahuja y Soler llama a esta actuación labor de "*configuración jurídica*" porque como dice, "el Notario asiste como cosa natural a la génesis y desarrollo del negocio jurídico que se somete a su autorización y despliega una labor de dirección y ajuste, a fin de adecuar el acto al interés de las partes y a la ley" . . . "a la acción de aplicar a un determinado hecho los conceptos formativos necesarios para la realización del supuesto previsto en la ley, conforme al interés de las partes. Es condición previa o simultánea a la autenticación del acto. Mediante ella el notario imprime en materia económica o moral que se le ofrece, la forma jurídica interna que constituye la base de la forma externa o instrumental".

Volviendo a González Palomino, nos dice que antes de esa intervención "pedagógica" no cree el Notario que hubiera

"voluntad consciente ni consentimiento verdadero." En la zona que da vida a la "relación *instrumentada*, como tal relación jurídica; . . . . como un medio técnico-jurídico, querido seriamente, para lograr una finalidad práctica," el Notario, observa el tratadista, actúa como un arquitecto. Y refiriéndose ya a su condición de testigo, excepcional, de la declaración de voluntad y del negocio jurídico, nos apunta que el testimonio notarial, el valor de las afirmaciones del Notario, tiene dos características prevalentes y diferenciales de casi todo otro testimonio, abstracción hecha de su calidad moral: (1) que el Notario es un testigo *rogado*, esto es, un testigo "profesional" preparado que se propone ver y relata los hechos que ve, a diferencia del testigo "eventual" que le sorprenden los hechos y relata sus impresiones sobre los mismos como hechos propios; y (2) que el Notario no es testigo fuera del propio instrumento público, "de manera que *relata los hechos, no en un momento posterior, sino en el mismo momento en que suceden*, sin poder alterar ni los hechos mismos, porque se requiere el asentimiento de los protagonistas (firma de los otorgantes o de los testigos), ni la fecha y lugar." (Énfasis del autor.)

Finalmente, refiriéndose a la función del Notario en la escritura pública en la *formación* y *afirmación* de la voluntad de los otorgantes, "que requiere calidades de formación jurídica, que no se improvisan", observa el tratadista que se dice que el Notario-jurista como unidad funcional, *"aplica* el derecho exactamente igual que el Juez, con la única diferencia de que éste lo hace *en el pleito*, y aquél *en la normalidad"*: y lo aplica "con el mismo esquema lógico: . . . norma, hecho, consecuencia . . . Esta consecuencia de la aplicación de la norma al hecho por el Notario, es la *declaración de legalidad* del acto instrumentado." (Énfasis del autor.) Aclarando un tanto, expone que el Notario propiamente no aplica, sino más bien él cumple y observa la ley, adopta la norma de conducta que corresponda en concreto al precepto

legal, y rigiendo su propia conducta, no la ajena, "se abstiene de prestar su intervención, mientras la conducta ajena no se ajuste a la norma." (⁵)

He ahí las fundamentales diferencias, a los efectos de la inscripción que va edificando la fe pública registral, —tercero—, entre el documento privado, que puede ser verídico, y auténtico, inclusive, y el instrumento público otorgado ante Notario y con intervención de la función notarial; y la diferencia, ahora específicamente en lo que respecta a la cuestión ante nos, entre la *escritura* pública en que ha de consignarse el título a inscribirse, (Arts. 2, 3) o documento en que fundan las partes su derecho, y cualquier otro instrumento público, como esta acta notarial de protocolización, en donde el notario no ha intervenido en la formación del derecho que surge o negocio jurídico, ni da fe pública de la voluntad declarada en cuanto al mismo, ni del consentimiento, ni tampoco de la autenticidad propia, porque la voluntad no se ha declarado ante él de acuerdo con las formalidades de ley, por personas por él conocidas o que le han sido identificadas.

■ Por carencia de esas fundamentales garantías en cuanto al título o derecho a inscribirse, en la forma como en la substancia, que asegura la intervención del notario, garantías éstas que son ingredientes a la vez de la fe pública registral—al tercero—, el contrato privado de arrendamiento celebrado en este caso aun cuando fuera archivado en el protocolo de un notario no puede tener acceso al Registro.

■ Los recurrentes en su alegato no han discutido en contra de los principios anteriormente expuestos. Fundamentalmente se basan, al combatir la nota denegatoria, en una disposición de la Sec. 17 de la Ley Notarial en vigor, que en lo aplicable dispone así: "No se realizará ninguna operación en los libros del Registro de la Propiedad en rela-

---

(⁵) José González Palomino, *Instituciones de Derecho Notarial* (1948) Tomo I, págs. 49–76; José M. Sanahuja y Soler, *Tratado de Derecho Notarial* (1945) Tomo I, págs. 57 y ss.

ción con un documento notarial otorgado fuera de Puerto Rico, a menos que el mismo haya sido previamente protocolizado en Puerto Rico, siendo obligación del notario cancelar los mismos derechos arancelarios, como si hubiera sido otorgado originalmente en Puerto Rico."

La anterior disposición de ley no es de aplicación, ya que se trata de un documento otorgado en Puerto Rico, y no fuera de Puerto Rico. Según transcribimos su parte final al principio, es obvio que el documento se firmó por ambas partes en Puerto Rico, si bien sólo la firma de una de las partes fue suscrita aquí ante notario. La Notario Ann Barrett de St. Louis no da fe en su declaración de que los otros otorgantes suscribieran el documento ante ella. Pero todavía más importante que ese hecho, la Sec. 17 de la Ley Notarial de su faz, ni por su historia legislativa, tiene el efecto a nuestro juicio de alterar todo un rancio sistema de derecho hipotecario permitiendo, mediante un acto de protocolización, que ganen acceso al Registro de la Propiedad en perjuicio de tercero, documentos carentes de las garantías necesarias de acuerdo con la ley y su reglamento. La protocolización del contrato privado de arrendamiento no fue un acto de elevar éste a escritura pública.

*La nota recurrida del Registrador de la Propiedad de Ponce, será confirmada.*