*In re* LÍMITE AL TÉRMINO PARA DESIGNAR NOTARIOS SUSTITUTOS.

*Número:* -----      *Resuelto:* 1 de noviembre de 1984

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

En nuestra imperativa obligación de reglamentar la función del ejercicio del notariado, consideramos hoy la figura del notario sustituto.

Se produce nuestra intervención en virtud de una comunicación del Director de Inspección de Notarías, Lic. Govén D. Martínez Surís, expositiva de su preocupación respecto a la recurrente práctica de designar notarios sustitutos por el prolongado término. de un año. Esta práctica surge al amparo del mutismo de la ley y ausencia de pronunciamiento previo.

## I

La prerrogativa de nombrar un notario sustituto la autoriza la Sec. 4 de la Ley Notarial, 4 L.P.R.A. sec. 1004. Reza: "El notario tendrá derecho a nombrar como sustituto suyo otro notario que sea su convecino y cuando por cualquier causa *que no sea permanente* no pudiese aquél estar al frente de su oficina, hará sus veces el sustituto. Tanto el notario como el sustituto deberán notificar por escrito y bajo sus firmas tal sustitución, al secretario de la sala correspondiente del Tribunal Superior de Puerto Rico [hoy al Director de Inspección de Notarías]." (Énfasis nuestro.)

La simpleza de esta disposición y la sola expresión de "que no sea permanente" plantea una indefinición en cuanto al término de sustitución. La incógnita requiere examinar el significado de la función notarial en nuestro ambiente jurídico.

Las prerrogativas y facultades depositadas en el notario son de considerable trascendencia. En él, el Estado delega la facultad de autenticar actos jurídicos, a través del principio

de la "fe pública notarial". A tal efecto hemos reconocido que el notario es el "único funcionario bajo nuestro ordenamiento de ley que, cuando de actos y contratos privados y voluntarios se trata, extrajudiciales, o de actos fuera de la competencia de los órganos políticos y·administrativos del Gobierno ejerce, por delegación, esa parte de la soberanía del Estado que consiste en la fe pública: que todos los demás individuos en la sociedad acepten y crean un acto o contrato privado sin haberlo presenciado". *Ponce Real Estate Corp.* v. *Registrador*, 87 D.P.R. 215, 224 (1963).

■ Las facultades conferidas al notario imponen responsabilidades equivalentes cimentadas en principios generales configurativos de la buena práctica notarial. Uno de estos es el de la estabilidad y continuidad. La Ley Notarial lo recoge y lo materializa en la norma de insustituibilidad. Se considera la función notarial como una personalísima, indelegable e intransferible. F. Monet y Antón, *El notario ante el mundo contemporáneo*, 73 Rev. Der. Not. 7 (1971). La excepción permitida es la sustitución. Pero su existencia no abroga el principio general, sino que ella debe ser forjada siguiendo sus contornos limitados.

■ La figura del notario sustituto surge del reconocimiento de que hay situaciones en que el notario ha de ausentarse por razones justificadas y es menester una continuidad. Porque, "[c]uando la Notaría queda —siquiera sea momentáneamente— sin titular que la desempeñe, se atiende el buen funcionamiento del servicio por medio de las sustituciones". E. Giménez-Arnau, *Derecho Notarial*, Pamplona, Ed. Univ. Navarra, 1976, pág. 282. "El Notariado, enraizado hondamente en la vida social, necesita para cumplir su propio destino permanencia, estabilidad, continuidad." J. A. García de Cortázar, *Carácter permanente e inamovible del cargo de notario. —Supresión de los nombramientos a plazo*, en *Segundo Congreso Internacional del Notariado Latino*, de la Junta Directiva del Ilustre Colegio Notarial de Madrid, Madrid, Ed. Gráficas Muybe, 1950, T. II, págs. 75, 76.

Este mecanismo no es nuevo, "[l]a sustitución por causa de imposibilidad (circunstancial) de realizar el ministerio notarial, estaba prevista en las fuentes castellanas, que permiten al notario legítimamente impedido (p. ej. por causa de enfermedad) la designación de un notario sustituto, 'rogado' por aquél; esta designación era libre en tanto recayera en un notario de la localidad, y la sustitución se reducía a la sola expedición del i. publ. (*conficere in publ. forma*), y no también a la extensión de la nota (*in nota recipere*)". J. Bono, *Historia del Derecho Notarial Español*, Madrid, Junta de Decanos de los Colegios Notariales de España, 1982, T. I, Vol. 2, págs. 326-327.

Por vía ilustrativa, actualmente en España, donde el sistema notarial está basado en demarcaciones notariales, las "ausencias" se encuentran regladas en los Arts. 43 al 56 del Reglamento Notarial, Cap. III, titulado *De los derechos de los notarios.* XVII *Aranzadi, Nuevo Diccionario de Legislación* 525-527 (1977). El Art. 45 expresa, "[i]ndependientemente del derecho anterior, [(1)] los Notarios podrán obtener licencias ordinarias y extraordinarias, que serán concedidas por las Juntas directivas de los respectivos Colegios y por la Dirección General".

Bajo este diseño, "[l]as Juntas directivas podrán conceder licencias ordinarias, que no excederán el plazo de un mes en cada año. La Dirección General podrá conceder licencias

---

(1) Comprende las circunstancias *no* consideradas como casos de ausencia.

"*Art. 44.* Los Notarios, no teniendo reclamado su ministerio, podrán ausentarse de su Notaría o distrito notarial por los plazos y con las condiciones siguientes:

"a) Por cinco días, si la Notaría está demarcada en población donde hay un solo Notario; b) Por diez días, si en la residencia hubiere dos Notarios en servicio efectivo; c) Y por quince días en las Notarías donde residan y presten servicio efectivo más de dos Notarios.

"Al hacer uso de este derecho, los Notarios deberán dar conocimiento a la Junta directiva y a la Dirección General de las fechas en que se ausenten y vuelvan a hacerse cargo de su Notaría.

"De las mencionadas ausencias no podrá usarse por cada notario más de seis veces al año, ni las ausencias podrán ser sucesivas, debiendo mediar entre una y otra un mes, por lo menos, de intervalo."

ordinarias, que no excederán del plazo de dos meses en cada año. Las licencias extraordinarias sólo se podrán conceder por la Dirección General en casos excepcionales, mediante justa causa y por plazo máximo de un año".

En estas instancias, el propio Reglamento Notarial provee para que el ausente sea reemplazado por un sustituto. A tal efecto, el Art. 49 reza: "Los Notarios, en los casos de ausencia, enfermedad temporal o cualquiera otra similar, serán sustituidos por el de la misma localidad que designe el titular . . . ."

De esta breve incursión a España percibimos que aún con las notables diferencias en organización y estructura de supervisión, en este aspecto ambos sistemas responden a un mismo denominador común: la absoluta continuidad en el ejercicio del notariado.

## II

■ La imagen de un notario que actúa en sustitución de otro conlleva problemas propios tales como accesibilidad del público, certificaciones, cobro de arancel y otros, que trascienden estos pronunciamientos. Sin embargo, estos problemas no deben ser óbice para impedir que un notario sea reemplazado en circunstancias meritorias y temporales tales como enfermedad o ausencias cortas del país. Pero tampoco debemos auspiciar ausencias prolongadas.

■ A tono con lo expuesto, *estimamos que tres (3) meses constituyen un término inicial razonable para la designación de un notario sustituto, sin menoscabo de extenderse el mismo tres (3) meses más cuando a juicio del Director de Inspección de Notarías medien circunstancias meritorias y justificadas. La falta de pronunciamiento previo nos mueve a impartirle a esta norma efectos prospectivos. Entrará en vigor el 1ro de enero de 1985.*