José Ramón Rodríguez y su esposa Simona Rodríguez, demandantes y apelantes, *v.* M. Joglar & Co., S. en C., demandada y apelada.

No. 6234.—*Sometido:* Enero 24, 1934. *Resuelto:* Marzo 16, 1934.

*Luis Mendín,* abogado de los apelantes; *A. Rivera Colón* y *L. Toro Cabañas,* abogados de la apelada.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

En 19 de julio de 1927, José Ramón Rodríguez y su esposa Simona Rodríguez, confesando haber recibido con anterioridad, en dinero efectivo y en calidad de préstamo, la cantidad de $2,900, constituyeron hipoteca a favor de la mercantil M. Joglar & Co., S. en C., sobre una finca rústica que se describe en la demanda, y que según se alega en la misma, era entonces de su propiedad. Esta finca fué vendida más tarde en pública subasta a Hamburger Bros. & Co., en la ejecución de una sentencia dictada a favor de la referida firma y en contra de José Ramón Rodríguez.

Los deudores hipotecarios, demandantes en este caso, alegan que no es cierto que recibieran en todo ni en parte de la demandada M. Joglar & Co., S. en C. la suma de $2,900 en

calidad de préstamo y que el consentimiento para que se otorgara dicha escritura lo prestó el demandante José Ramón Rodríguez bajo la intimidación de la demandada M. Joglar & Co., S. en C. de que si no consentía, procedería inmediatamente a demandar ante los tribunales de justicia al anciano padre del demandante Francisco J. Rodríguez y a embargar todos sus bienes, sumiéndolo en la miseria, en cobro de la referida suma de dinero que adeudaba el mencionado Francisco J. Rodríguez a dicha mercantil demandada.

Se alega además que la demandante Simona Rodríguez prestó su consentimiento en la referida escritura por los insistentes ruegos de su esposo José Ramón Rodríguez; y que por parte de la mercantil demandada hubo, simultáneamente al otorgamiento de la escritura de hipoteca, la promesa de que no se haría efectivo el crédito hipotecario, el cual era solamente una medida provisional mientras se liquidaba la cuenta del referido padre del demandante, Francisco J. Rodríguez.

Niega la mercantil demandada todas las alegaciones de la demanda, y alega como defensa que la finca objeto de la hipoteca pertenecía entonces íntegramente al padre del demandante José Ramón Rodríguez, o sea a don Francisco J. Rodríguez, quien vivía en dicha finca; que el Sr. Rodríguez, padre, estaba adeudando a la demandada la suma de $1,462.99, y que José Ramón Rodríguez le adeudaba la cantidad de $350.56; que los citados $2,900, importe del crédito hipotecario, los recibió el deudor José Ramón Rodríguez en la siguiente forma: $1,462.99 adeudados por su padre, quien renunció a todos sus derechos y acciones sobre la finca hipotecada, en consideración a que José Ramón Rodríguez pagara la referida deuda y a que dicha demandada le entregara además, por cuenta de José Ramón Rodríguez, $730.01, arrojando todo un total de $2,200. El citado José Ramón Rodríguez en unión de su esposa constituyó hipoteca a favor de la demandada para garantizar el pago de los referidos $2,200, $350.56 de su cuenta corriente, y $349.44 que adicionalmente

recibió en dos cheques expedidos contra el Banco Comercial de Puerto Rico, ascendiendo todas estas cantidades a la suma de $2,900 que es el importe del préstamo hipotecario.

Declarada sin lugar la demanda, los demandados presentaron el presente recurso de apelación, atribuyendo a la corte inferior el error de haber estimado probado por la preponderancia de la evidencia que la finca hipotecada por el demandante y su esposa a favor de la demandada pertenecía en propiedad a Francisco J. Rodríguez en la fecha de la hipoteca y no a los "hipotecantes", y que el contrato de hipoteca tuvo causa suficiente.

■■ La causa de acción de los demandantes se basa únicamente en haber sido intimidados por la demandada y haber prestado su consentimiento bajo esta intimidación. Aun en la hipótesis de que los demandantes sean dueños de la finca y que la corte haya incurrido en error al sostener que pertenece al padre, la demanda no puede prosperar si queda demostrado que en este caso no hubo intimidación. Acepta José Ramón Rodríguez que su padre adeudaba una cantidad a la mercantil demandada y declara que otorgó la ecritura porque su referido padre le manifestó que tenía una deuda considerable con el Sr. Manuel Joglar, que éste lo había amenazado que si no la garantizaba tendría que ejecutarle unos bienes que tenía y un pedazo de tierra también, y que se vería en el preciso caso si le embargaban estos bienes de tener que quedarse en la calle. El declarante prometió hablar con el Sr. Joglar como lo hizo algunos días después. Copiamos literalmente las palabras del testigo en cuanto a su conversación con Joglar: ". . . que entonces le propuso éste, que si le firmaba una escritura de hipoteca, puesto que no era el declarante quien debía; que esto era para evitar pleitos y de este modo él no tendría que embargar al padre. Entonces el declarante le contestó que tendría que consultar con su esposa y ésta estaba en Morovis; y entonces Joglar lo invitó a ir a Morovis y fué donde ella, mientras Joglar fué donde el notario. Que él le informó a su esposa que iban a hacer

una hipoteca a favor de don Manuel Joglar para evitar que al viejo se le embargasen sus bienes, y ella le dijo que eso le podría traer perjuicios; pero entonces él le informó que no veía que eso les pudiera traer ningún perjuicio en nada, puesto que no era deuda que ellos debieran y sí su padre; que entonces volvió donde Joglar y le dijo que hicieran la escritura.''

Las manifestaciones de José Ramón Rodríguez tienden a demostrar que el préstamo hipotecario tuvo el efecto de una garantía para evitar que la demandada hiciese efectiva la obligación de su padre por la vía judicial.

Admitiendo como ciertas, para los efectos de la argumentación, las manifestaciones del demandante, que la corte inferior no creyó, tendremos que la parte demandada se limitó a expresar que si no se le garantizaba la deuda, ejercería el derecho de cobrar judicialmente su crédito. No hay intimidación, a nuestro juicio, cuando una persona hace saber a otra que se propone ejercer el derecho legítimo de acudir a los tribunales si no se le hace efectiva una obligación exigible. Tanto Francisco Rodríguez, quien contrajo la obligación, como su hijo el demandante, sabían que la obligación, una vez exigible, estaba sujeta a ser reclamada por la vía judicial.

Convenimos, como dice Manresa glosando el artículo 1267 del Código Civil español, equivalente al 1219 de nuestro Código Civil, edición 1930, ''que puede arrancarse el consentimiento de un hombre bajo la amenaza de un mal, que a él no arredraría, pero que comprenda puede ser de graves consecuencias para una mujer débil, un padre anciano, o un niño indefenso.'' Este no es el caso ante nos. Los elementos de la intimidación no surgen de las manifestaciones que el demandante atribuye a la demandada en el sentido de que si se firmaba la escritura de hipoteca se evitarían pleitos y no tendría que embargar los bienes del padre.

Comentando el artículo anteriormente citado dice el Sr. Manresa en la página 595 del tomo octavo de sus Comentarios al Código Civil español, cuarta edición:

"El Derecho moderno, cuya tendencia recoge el Código, ha buscado, siguiendo la influencia del canónico, una fórmula más amplia y conforme a la debilidad humana, de la que inspiró en este punto la energía de la ley en Roma. Queda la apreciación de la influencia que el miedo pueda tener, fiada en mucho a los Tribunales y dependiente de las circunstancias particulares del sujeto; pero no deja de dar la ley reglas acerca de lo que pudiéramos llamar esencial y objetivo en la intimidación.

"La primera de las circunstancias es que el temor sea racional y fundado, lo cual supone la verosimilitud de la amenaza, la seriedad en ésta, la posibilidad de que se realice, la disposición de medios para ello por parte de quien la dirigió, atendidas las circunstancias del caso.

"Esencial es también que se amenace con un *mal,* y en esta sola palabra nos detenemos, sin pasar a los adjetivos que la siguen, porque no entendiendo el legislador como mal aquello que el mismo derecho ampara o impone, deducimos de ahí la consecuencia importante de que el mal ha de ser injusto, y de que no intimida quien se limita a invocar su derecho, sin abusar del mismo. Así no podrá decir el deudor que consiente en pagar bajo la amenaza de acudir a los Tribunales y de las costas del litigio, que fué nulo su consentimiento, y en cambio lo será si, traspasando el acreedor los límites de su derecho, hubiera arrancado del deudor con las mismas amenazas legales una novación de contrato o la confesión de una mayor deuda. No es problema difícil, a nuestro juicio, el de un contrato celebrado bajo la amenaza de ser denunciado como responsable de un hecho punible, ya que si bien es lícita, y aun obligatoria a veces, la denuncia, es inmoral y opuesto al derecho el pacto para no denunciar, y por tanto, quien abusó del conocimiento que tenía de la comisión de un delito por otro, así como no logró con el pacto librar a éste de responsabilidad, no pudo conseguir tampoco para sí una ventaja que pueda reclamar eficazmente.

"En un caso sometido al Tribunal Supremo ha decidido éste que no implica intimidación el haberse contratado ante la amenaza de denunciarse el desfalco cometido *por un contratante al otro,* mucho más cuando el contrato que se celebró representa la indemnización al perjudicado por dicho desfalco; y como doctrina general, sienta nuestro primer Tribunal la de que es tesis jurídica establecida en nuestras antiguas leyes, y aceptada sin contradicción por la jurisprudencia, que el mal a que se refiere el art. 1267 ha de ser injusto, y de ninguna manera el que pueda producir el ejercicio de un derecho legítimo (sentencia de 12 de Febrero de 1915)."

La jurisprudencia americana sostiene la misma doctrina. La amenaza de ejecutar un derecho no constituye intimidación (*duress*). 13 C. J. 399. En el caso de *Pease* v. *Francis,* 55 Atlantic 687, la corte dijo:

"El demandante alega que fué compelido por las circunstancias y por la amenaza del demandado de ejecutar una hipoteca que tenía en la propiedad personal del demandante, alegando de este modo que actuó bajo una clase de intimidación o al menos de coerción. En Dispeau v. First Nat. Bank, 24 R.I. 570, 53 Atl. 868, esta corte dijo: 'No es coerción ni intimidación amenazar hacer lo que uno tiene derecho a ejecutar.' "

En el caso de *Stout* v. *Judd,* 63 Pac. 662, dijo la Corte de Apelaciones de Kansas:

"Se alega además que la corte erró en sus instrucciones al jurado. Se basa esta objeción en que la corte instruyó al jurado que no hubo evidencia ofrecida por los demandados suficiente para someter a la consideración de dicho jurado la cuestión de falta de causa e intimidación en el otorgamiento del pagaré. Nosotros creemos que la corte actuó correctamente al someter esta instrucción. La única evidencia ofrecida en apoyo de esta fase del caso partió de los demandados, quienes declararon que la única intimidación fué la amenaza del demandante de instituir una ejecución hipotecaria en el evento de que los demandados dejaran de renovar sus obligaciones vencidas. Esto no constituye fraude o intimidación en derecho, y la cuestión fué correctamente eliminada de la consideración del jurado."

En el presente caso Francisco J. Rodríguez, padre del demandante, declaró que la mercantil demandada no había ejercido ningún acto de intimidación contra él y que no fué amenazado con la ejecución de la obligación que tenía contraída con la referida mercantil. La corte inferior expresa que este testigo declaró de una manera clara, terminante, veraz y convincente, y establece además la conclusión de que la propiedad, cuando fué hipotecada, pertenecía al padre y no al hijo. No es necesario resolver si la corte estuvo acertada o no al sentar esta conclusión. Nos basta con saber que en este caso no hubo intimidación, que José Ramón Rodríguez

y su esposa hipotecaron el inmueble que se describe en la demanda a favor de la demandada sabiendo que su padre. había contraído una deuda con esta firma, y que si nos atenemos a las alegaciones de la demanda y al testimonio de José Ramón Rodríguez, el contrato celebrado entre la demandada y los demandantes no constituye otra cosa que una operación para garantizar la deuda contraída por Francisco J. Rodríguez.

Se alega por último que la corte cometió error al condenar en costas a los demandantes. Desestimamos este error por entender que la corte ejercitó juiciosamente su discreción al imponer las costas a la parte perdidosa.

*Debe confirmarse la sentencia apelada.*