SAN JUAN CREDIT, INC., demandante y recurrida, *v.* CONCEPCIÓN RAMÍREZ CARRASQUILLO, JUAN RAMÍREZ VIERA y QUÉNIDA RODRÍGUEZ DE RAMÍREZ, demandados y recurrentes.

*Número:* R-80-117       *Resuelto:* 18 de junio de 1982

*Ludwig Ortiz Belaval*, abogado de la parte recurrente; *Jesús M. Rivera Arvelo*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El 8 de noviembre de 1974 Juan Ramírez Viera y su esposa Quénida Rodríguez Ramírez compraron a la Lcda. Gloria Tejera Camacho un bien inmueble y le entregaron un pagaré al portador por la cantidad de $16,292 más intereses al 9% anual. Subsiguientemente, no habiéndose honrado, su tenedora la licenciada Tejera Camacho lo negoció a título oneroso a San Juan Credit, Inc.

El 19 de enero de 1979, San Juan Credit demandó en el Tribunal Superior, Sala de San Juan, a los esposos Ramírez-Rodríguez en cobro del pagaré por haber perdido su garantía real, al ejecutarse una primera hipoteca que gravaba la propiedad. Reclamó $28,001.50 desglosado en $16,292 de principal, $6,109.50 de intereses y $5,600 por concepto de costas, gastos y honorarios de abogado.

Iniciado el pleito, se dictó orden de embargo en aseguramiento de la efectividad de la sentencia. A comienzos de marzo de 1979 se personaron a la residencia de los allí demandados esposos Ramírez-Rodríguez, un alguacil, un depositario y el abogado de la financiera San Juan Credit, informándoles que tenían una orden de embargo y procederían a embargar los bienes muebles si no se efectuaba el pago de inmediato. En ese momento se discutió y expresó la posibilidad de que algún familiar tuviera una propiedad libre de gravámenes que pudiera garantizar con hipoteca la deuda reclamada. Luego de esa conversación, Ramírez se trasladó con el abogado de la financiera San Juan Credit a la casa de su madre, la Sra. Concepción Ramírez, donde se examinó una escritura de partición en la cual se adjudicaban a ella unos derechos. Esta gestión y diálogo culminó en que doña Concepción Ramírez cedió "todos sus derechos y/o participación hereditaria . . . en la herencia" de su esposo Felipe González Soto, para ser hipotecados para garantizar la reclamación de $28,001.50 de San Juan Credit contra los esposos Ramírez-Rodríguez. A tal efecto, el 2 de marzo de 1979, ella suscribió la escritura núm. 8 sobre segunda hipoteca, garantizando así un pagaré al portador.

Subsiguientemente, los esposos Ramírez-Rodríguez no hicieron ningún pago de los intereses. Tampoco se pudo inscribir la escritura de constitución de hipoteca por razones imputables a los deudores. San Juan Credit entonces aceleró el vencimiento del principal y radicó una demanda en cobro de dinero. En esta ocasión demandó no

sólo a los esposos Ramírez-Rodríguez sino también a la Sra. Concepción Ramírez Carrasquillo.

Previa contestación a la demanda y luego del correspondiente juicio, el tribunal dictó sentencia en la que condenaba a los demandados al pago de las sumas reclamadas. Recurrieron ante nos, señalando siete errores que examinaremos a continuación.

*Primero:* Cometió error el Honorable Tribunal de primera instancia al decretar que la parte demandante adquirió un derecho real de propiedad por el mero hecho de haber vencido en un pleito de cobro de dinero.

■ Se basa este planteamiento en el pronunciamiento contenido en el último párrafo de la sentencia, donde se dispone que: "En caso de que la demandada no satisfaga la presente Sentencia se declara en este acto el derecho de la demandante, que desde hoy forma parte de la Comunidad de Bienes y adquiere los derechos que hasta el presente ha tenido la demandada, Concepción Ramírez Carrasquillo en la misma". El error, aunque inconsecuente, fue cometido por omisión. El tribunal, inadvertidamente, omitió la frase "previo los trámites en ley". No podemos pensar ni atribuirle que ordenara que se prescindiera de todos los pasos procesales establecidos por ley para hacer efectiva la sentencia. El carácter del decreto dictado sólo podía contemplar que se declarara la existencia de la deuda, a ser cobrada observando el procedimiento ordinario de ejecución dispuesto en las Reglas de Procedimiento Civil. Como consecuencia, hemos de modificar la sentencia, según los fines expuestos.

*Segundo:* Cometió error el tribunal de primera instancia al concluir que en el contrato existía objeto y causa válida.

■ El Art. 1213 del Código Civil, 31 L.P.R.A. sec. 3391, exige como requisitos indispensables para la existencia de

un contrato la concurrencia de consentimiento de los contratantes, objeto y causa. Son susceptibles de contratación todas las cosas del comercio de los hombres, aun las futuras, siempre que no sean imposibles y que sea una cosa determinada en cuanto a su especie. Arts. 1223, 1224 y 1225 (31 L.P.R.A. secs. 3421, 3422 y 3423). Objeto del contrato es, en realidad, la obligación que por él se constituye, pero como ésta, a su vez, tiene por contenido una prestación de dar, hacer o no hacer, por lo general se llama objeto del contrato a las cosas o servicios que son materia, respectivamente, de las obligaciones de dar o de hacer. La prueba clásica para detectar el *objeto* en los contratos es responder a la pregunta: *¿qué es* lo que se debe? J. Castán, *Derecho Civil español, Común y Foral,* 11ma ed., 1974, T. 3, págs. 467 y 470; J. M. Manresa, *Código Civil español,* 6ta ed., 1967, T.VIII, Vol. 2, págs. 598–599. La contestación a la interrogante en el caso de autos refleja que el *objeto* del contrato fue la deuda de $28,001.50 de los esposos Ramírez-Rodríguez, la cual garantizó Concepción Ramírez con su participación en la propiedad.

También se demostró el requisito de *causa.* Aunque Concepción Ramírez Carrasquillo pretendió formalizar una segunda hipoteca, garantizando un pagaré al portador —la cual no se constituyó propiamente— al ella suscribir el pagaré al portador y entregarlo a la demandante para asegurar la deuda de los esposos Ramírez-Rodríguez, dicho pagaré advino a la vida del derecho como documento negociable con valor. *Liechty* v. *Descartes Saurí,* 109 D.P.R. 496 (1980); *Lozada Merced* v. *Registrador,* 100 D.P.R. 99 (1971); *Navedo Torres* v. *Registrador,* 87 D.P.R. 794 (1963); y *Vendrell* v. *Torres Aguiló,* 85 D.P.R. 873 (1962). En *The Texas Co.* v. *Estrada, y Álvarez, Int.,* 50 D.P.R. 743 (1936), reconocimos que el tenedor de un pagaré negociable tiene a su favor la presunción legal de que es válido y fue otorgado por causa justa y onerosa. Por otro lado, desde *Miranda* contra *Franco,* 2 D.P.R. 565 (1902), resolvimos que, aunque la ver-

dadera causa de deber no haya sido expresada en un pagaré, si se prueba y consta la legitimidad, verdad y legalidad de la deuda, el contrato basado en la misma es válido y obligatorio.

Este resultado, suficiente para disponer del asunto, se logra también bajo un análisis de los principios que informa la causa como requisito del contrato. Veamos.

El Art. 1226 del Código Civil, 31 L.P.R.A. sec. 3431, nos dice que en los contratos onerosos se entiende por causa —para cada parte contratante— la prestación o promesa de una cosa o servicio por la otra parte. Se reconoce que la causa en los contratos es la razón o fin, o sea, el porqué de la obligación y —siguiendo la técnica de pregunta— responde a la interrogante ¿por qué se debe? Castán, *op. cit.*, pág. 471; Manresa, *op. cit.*, págs. 619–620.

Manresa aclara que "[s]i bien la causa de los contratos, tal como lo entiende el artículo 1.274 del Código civil [en Puerto Rico el 1226], no trae su origen de las razones o motivos particulares que tuvieran los otorgantes para celebrarlos, sino del *fin más próximo que se propusieran con la prestación* y contraprestación de las cosas o servicios convenidos". *Op. cit.*, pág. 624. Castán por su parte, aunque admite la diferencia que existe entre la causa de un contrato y los motivos de éste, nos dice, sin embargo, que la doctrina moderna tiende a construir una teoría subjetivista de la causa en la cual juegan los motivos un papel fundamental, sin borrar del todo la distinción entre causa y motivo, admitiendo que, en cierto caso, el motivo puede influir sobre la ineficacia del contrato. *Op. cit.*, págs. 473–475.

Aplicando entonces dichas normas al caso que nos ocupa, es razonable concluir que la *causa* para la formulación y entrega del pagaré al portador fue garantizar la deuda de los esposos Ramírez-Rodríguez. Por otro lado, los *motivos* de la señora Ramírez Carrasquillo para así actuar fue evitar que a su hijo y nuera le fueran embargados sus bienes muebles y que la demandante desistiera de la demanda original

radicada en el Tribunal Superior, Sala de San Juan, Caso Civil Núm. 79-357 (807) sobre cobro de pagaré.

No siendo inmoral, por tanto, dicha causa ni sus motivos, ni una que persiga un fin ilícito, la misma es completamente válida. Ya en *Sucesión Gómez* v. *Colón*, 63 D.P.R. 104 (1944), habíamos reconocido que el efecto y la gratitud de una persona hacia un pariente —por éste haberla cuidado y atendido— era causa suficiente para un contrato.

*Tercero:* Cometió error el Tribunal al entender que existía una cláusula aceleratoria que permitía el cobro de la totalidad de la alegada deuda y no de solamente los intereses.

Este señalamiento está carente de todo mérito. En el párrafo quinto de la escritura se estipuló:

Que se devengarán intereses mensuales al ocho (8%) por ciento anual disponiéndose que dejado de pagar un plazo de los intereses, quedará vencida la totalidad de la obligación y podrá ejecutar de inmediato el tenedor del PAGARE al Portador.

No es necesario mucha elucidación para comprender que al dejar los demandados de pagar los intereses de la deuda, la demandante estaba plenamente facultada para ejercer su derecho a declarar vencida la totalidad de la obligación y gestionar judicialmente su cobro.

*Cuarto:* Cometió error el Honorable Tribunal inferior al negarse a la petición hecha por la parte demandada-recurrente de que se celebrara una conferencia con antelación al juicio.

Este señalamiento, al igual que el anterior, es inmeritorio. La Regla 37 de Procedimiento Civil reconoce y regula la conferencia con antelación al juicio. Esta regla —necesaria en la consecución de garantizar una solución justa, rápida y económica del proceso— tiene como propósito simplificar, reducir y hasta evitar el juicio si es posible,

mediante: la eliminación de cuestiones litigiosas; la promoción de estipulaciones entre las partes así como de admisiones; y la utilización de otros recursos disponibles a las partes y al tribunal.

Según está redactada la Regla, su celebración es discrecional, pudiendo ser ésta ordenada a instancia del tribunal o de parte *dependiendo en mayor o menor medida de las complejidades del caso.* En términos generales es deseable su celebración cuando la controversia comprende intrincadas cuestiones de hechos, abundante prueba documental y testifical, multiplicidad de partes y reclamaciones y se han utilizado intensamente los mecanismos de descubrimiento de prueba. Véase *Práctica Procesal Puertorriqueña,* Publicaciones J.T.S., Vol. II, Regla 37, pág. 290.

Ninguna de las situaciones mencionadas estaba presente en el caso de autos. Tan sólo se trataba de una acción en cobro de dinero sin mayor trascendencia. Acceder entonces a una conferencia hubiese producido, irónicamente, un retraso en los procedimientos. Actuó en forma correcta el tribunal al denegarla.

> *Quinto:* Cometió error el Honorable Tribunal al no decretar la nulidad de la escritura de hipoteca.

El alegato de los demandados se basa en la Ley Notarial, 4 L.P.R.A. secs. 1014, 1015 y 1020, y en el Art. 127 de la Ley Hipotecaria de 1893 (30 L.P.R.A. sec. 223), a saber, que en la escritura de hipoteca intervinieron dos testigos que no eran idóneos, el notario no la leyó y en ella no se hizo constar el precio de *tasación* del inmueble gravado. Si bien se incurrió en tales inobservancias, ello no tiene mayor trascendencia jurídica. Nos explicamos. Aquí, la escritura de hipoteca *nunca se inscribió* en el Registro de la Propiedad, como lo requería el Art. 1774 del Código Civil, 31 L.P.R.A. sec. 5042; *Gaztambide* v. *Sucn. Ortiz,* 70 D.P.R. 412 (1949); *Beiró* v. *Vázquez,* 52 D.P.R. 601 (1938). Por tanto, la misma nunca se constituyó como derecho real. Ya

que no existía hipoteca como tal, entonces, no había ni tenemos nada que anular. *Liechty* v. *Descartes Saurí*, supra. El tribunal de instancia dictaminó correctamente que había una deuda que tenía que pagar Concepción Ramírez Carrasquillo. Bajo el supuesto de estos defectos por razón de forma —en los que concurren los requisitos de consentimiento, objeto y causa— se aplicaría la teoría de conversión consagrada en el Art. 1177 del Código Civil, 31 L.P.R.A. sec. 3278, y *no* se vería afectada la validez intrínseca del negocio jurídico *inter partes*, esto es, la escritura defectuosa hizo prueba como documento privado, aunque quedara al margen del ámbito registral. *Sucn. Santos* v. *Registrador*, 108 D.P.R. 831 (1979); *Reyes* v. *Torres*, 65 D.P.R. 821 (1946); *Rosario* v. *Registrador*, 59 D.P.R. 428 (1941) y *Clavell* v. *Clavell*, 41 D.P.R. 195 (1930).

*Sexto:* Cometió error el Tribunal en las cuantías a que condenó a pagar a la co-demandada.

Este error no fue cometido. Las cuantías que tuvo el tribunal ante sí fueron fáciles de computar y se desprendían de la escritura firmada. Los demandados alegan que la partida de $28,001.50 es incorrecta. No encontramos fundamento alguno para este señalamiento. Los deudores esposos Ramírez-Rodríguez fueron demandados originalmente por esa cantidad. Luego se hace la segunda escritura, tratando de garantizar esa deuda y, como testigos, firman de nuevo dicho documento. ¿Por qué si no era correcta esa obligación consintieron y firmaron sin objeción alguna?

*Séptimo:* Cometió error la Honorable Sala sentenciadora al no permitir a los demandados recurrentes presentar prueba sobre falta de consentimiento, objeto y causa en el contrato.

Los demandados se limitan a discutir el que no hubo consentimiento de parte de Concepción Ramírez Carrasquillo en la contratación y que el tribunal de instancia no les permitió presentar prueba al respecto, ni anotarla en el

expediente. Específicamente en su alegato afirman "[e]ra el propósito de los Demandados-Recurrentes demostrar al Tribunal, mediante *prueba testifical de la propia otorgante y de otros testigos,* que la escritura y el pagaré eran nulos *por cuanto la otorgante había comparecido a dicha contratación* sintiéndose amenazada, intimidada y coaccionada. Que en adición desconocía lo que estaba firmando". (Énfasis nuestro.)

▪ Teóricamente, el error fue cometido. De acuerdo con la Regla 69(B)(2) de Evidencia se puede traer evidencia extrínseca del contenido de un documento cuando la validez del convenio constituye el hecho controvertido. Habiéndose alegado en la contestación a la demanda —siendo la teoría de la parte demandada que la escritura era una nula por haber mediado intimidación de parte de la demandante— el tribunal debió haber permitido su presentación. *Alvarado* v. *Bonilla,* 86 D.P.R. 490 (1962); *Rolón Marrero* v. *Rivera Malavé,* 85 D.P.R. 731 (1962); *Rossy* v. *Tribunal Superior,* 80 D.P.R. 729 (1958); y *Ramírez* v. *Ramírez,* 65 D.P.R. 544 (1946).

▪ Ahora bien, ¿este error así cometido es uno de tal naturaleza que amerite la revocación de la sentencia? La Regla 5 de Evidencia establece que no se dejará sin efecto una determinación de exclusión de evidencia ni se revocará sentencia o decisión alguna por motivo de exclusión errónea de evidencia, a menos que (1) la evidencia fuera erróneamente excluida, a pesar de que la naturaleza, propósito y pertinencia de la misma fuera traída a la atención del tribunal mediante una oferta de prueba o de cualquier otro modo; y (2) el tribunal que considera el efecto de la exclusión errónea entiende que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita.

En el presente caso los demandantes cumplieron cabalmente con el primer requisito. En cuanto al segundo debemos preguntarnos ¿fue la exclusión de dicha evidencia un

factor decisivo o sustancial para la sentencia? A poco reflexionamos, notamos que se impone una respuesta negativa. Como señaláramos, la evidencia que no fue admitida fue de tipo testifical, de la propia otorgante de la escritura y de otros testigos. De la exposición narrativa del caso se desprende que durante el proceso declararon por la parte demandante, Juan Ramírez Viera, la licenciada Tejera y Luis Rafael González, depositario en el momento del embargo. Por la parte demandada declaró Quénida Rodríguez Berríos, esposa de Juan Ramírez, y la madre de éste, Concepción Ramírez Carrasquillo. Surge también de la exposición narrativa de la prueba que el incidente cuando se pretendió presentar prueba sobre la alegada falta de consentimiento por parte de Concepción Ramírez Carrasquillo, al otorgar la escritura, fue durante el *contrainterrogatorio* de su *hijo* Juan Ramírez Viera y el interrogatorio directo de la *esposa de éste*, Quénida Rodríguez Berríos. *No aparece que se tratara de presentar ese extremo al declarar Concepción Ramírez Carrasquillo.*

El examen minucioso de esa exposición narrativa nos convence que el error no fue perjudicial. De haber en nuestra mente la posibilidad de dudas al respecto, las mismas se despejan al examinar la moción de la parte demandante, en la cual se transcriben partes importantes de lo declarado por los testigos durante el juicio, (1) que ilustran y complementan la Exposición.

---

(1) El testigo Juan Ramírez Viera, entre otras cosas declaró lo siguiente:

"Lic. RIVERA ARVELO:

P. Vamos a ser más específico, testigo, para el 2 de marzo de 1979, [¿]recuerda usted que su señora madre haya otorgado alguna escritura?

R. Sí, señor.

P. [¿]Por qué su señora madre otorgó esa escritura?

R. Bueno, mi madre otorgó una escritura, ¿las razones todas por la cual?

P. Sí, estamos buscando la verdad.

R. Mi madre otorgó una escritura por la sencilla razón que el día 2 de marzo, yo me encontraba en mi trabajo, en relación con un embargo que había en mi casa. Me iban a llevar todo, los muebles, rejas, lámparas, cortinas,

Unidas a estas declaraciones, existen otros extremos en la prueba que ni el tribunal de instancia ni este foro

alfombras, todo, por una deuda que yo nunca la he visto, que conste; y nunca vi el pagaré, nunca lo he visto el emplazamiento, nunca he visto absolutamente nada sobre eso.

HON. JUEZ:

P. O sea, que si [¿]lo que le iban a llevar allí se lo embargaron?

R. No se embargó.

R. . . .Yo le digo, Bueno [*sic*], mi mamá tiene propiedades, pero esos son bienes de herencia de nosotros, ¿verdad? Entonces me hizo la pregunta, que cuánto yo creía que debía la casa y yo le dije, bueno la casa debe como seis· mil pesos. Entonces me preguntó, '[¿]dónde se encuentra su mamá?' Yo le dije donde se encontraba y se montó en el carro conmigo y fuimos y buscamos a mi mamá y él fue. *Y la madre mía viendo en las condiciones que yo me encontraba con mi esposa accedió a la firma.*

LIC. ORTIZ:

P. [¿]Qué es eso que tiene en la mano?

R. Un pagaré hipotecario.

LIC. RIVERA ARVELO:

P. [¿]Quién lo firma?

R. Juan Ramírez Viera, Rodríguez Berríos y Concepción Ramírez Carrasquillo.

P. [¿]Le consta que Doña Concepción Ramírez Carrasquillo firmó el documento?

R. Lo firmó.

LIC. RIVERA ARVELO:

P. Testigo, le pregunto . . . ese documento que le están entregando, ¿refleja la deuda original que usted adeudaba a la Lic. Tejera?

R. Sí, Señor.

LIC. RIVERA ARVELO:

Sí, nosotros vamos a someter en evidencia el documento.

HON. JUEZ:

Se admite."

La testigo Quénida Rodríguez, esposa de Juan Ramírez Viera declaró:

"LIC. ORTIZ:

P. Testigo, cuando se otorga el pagaré objeto de este proceso, ¿usted estaba presente cuando se otorga la escritura en la oficina del Lic. Rivera Arvelo?

R. Del pagaré este para proteger, sí.

podrían pasar por alto. Primer señalamiento: El 14 de julio de 1971, Concepción Ramírez Carrasquillo compareció con

LIC. RIVERA ARVELO:

P. ¿Para proteger qué?

R. O sea, el pagaré que se hizo para . . .

LIC. RIVERA ARVELO:

P. [¿]Para proteger qué?

R. Para el embargo, para que no nos fueran a embargar.

.　　.　　.　　.　　.　　.　　.

LIC. ORTIZ:

P. [¿]Y a Doña Concepción se le explicó lo que estaba firmando? ¿Ella entendía eso?

R. Bueno, el abogado le explicó a ella. Le dijo lo que pasaba, digo, en ese momento ella firmó por consideración a nosotros, pero ella misma ni prácticamente ni entiende nada de eso."

Como si esto fuera poco, la propia demandada Concepción Ramírez Carrasquillo declaró durante el contrainterrogatorio, entre otras cosas, lo siguiente:

LIC. RIVERA ARVELO:

P. Una sola preguntita corta. ¿Y por qué usted firmó el documento testigo? Le pregunto si [¿]fue en consideración o como causa y evitar que se embargara a su hijo?

R. No era sabedora para lo que podía ser.

P. [¿]Usted no sabe por qué firmó, ni el documento se le leyó tampoco?

R. Porque como yo lo veía a usted que tanto lo ajoraba a él.

P. Yo lo ajoraba. Oiga, ¿y a usted no se le leyó el documento tampoco? [¿]No se le leyó?

HON. JUEZ:

P. [¿]Que si se le leyó en voz alta el documento?

R. Bueno, si lo leyeron, yo no sabía ni lo que leían.

LIC. RIVERA ARVELO:

P. ¡Ah!, [¿]usted no sabía lo que leían?

R. Ni sé letra, ni sé nada.

P. ¿No sabe escuchar usted? [¿]Se le leyó?

R. Escuché algunas cosas y no le daba . . . Que no pensaba lo que podía hacer.

HON. JUEZ:

P. [¿]No pensaba lo que podía hacer?

TESTIGO:

R. Ni para qué.

LIC. RIVERA ARVELO:

P. Pero en resumidas cuentas lo que se le leyó, ¿lo entendió?

R. Lo único que usted me decía antes de leer que me iba a entregar las escrituras al otro día porque eso era para . . .

su esposo Felipe González Soto en la constitución de la escritura núm. 25 de compraventa y reconocimiento de hipoteca ante el notario Federico Valladares. La residencia, adquirida por éstos mediante esta escritura núm. 25, la consiguieron al precio de $23,000, de los cuales los compradores entregaron la suma de $12,673 y retuvieron para el pago de la hipoteca el remanente de $10,343. Cabe señalar que en esta escritura la esposa comparece a firmar la misma.

P. Sí, pero mi pregunta no es esa. Mi pregunta es que si lo que a usted se le leyó [¿]lo entendió?

R. *Yo no entendía nada.*

P. *No entendió nada. Oiga y cuando se le leyó,* [¿]usted dijo que no entendía nada allí?

HON. JUEZ:

P. *Que si eso usted lo dijo allí en la oficina, de que no entendía nada.*

TESTIGO:

R. *Ni recuerdo si lo dije o no.*

HON. JUEZ:

No recuerda.

LIC. RIVERA ARVELO:

P. [¿]No recuerda si lo dijo?

R. No.

P. [¿]Supo usted qué estábamos haciendo con su señor hijo para aquella fecha? ¿Qué estaba ocurriendo con él? ¿Todavía usted no sabe lo que está pasando?

R. Todavía no sé.

P. [¿]Todavía usted no sabe?

R. Porque yo no sé para qué fue que lo llevaron a él allí y para qué fue que hicieron eso. Yo no estaba sabedora de nada de eso.

P. [¿]Todavía usted no lo sabe?

R. Todavía no lo sé.

P. [¿]Está segura que es eso?

R. De eso yo me acuerdo porque mis hijos me dicen 'mami, esto es esto. Mami, esto hay que guardarlo porque esto es de nosotros.'

P. [¿]Usted sabe que esa escritura tiene que ver con la casa y la herencia? ¿Eso lo entiende?

R. Yo oigo decir a mis hijos que para eso es.

P. No, yo le pregunto que si [¿]usted lo entiende así?

R. Yo entiendo que sea para eso.

P. Usted entiende que sea para eso. Ahora, [¿]pero usted no entiende nada en cuanto a la escritura que usted hizo acá?

R. Yo no sé nada de eso." (Énfasis suplido.)

El 16 de enero de 1978, ella compareció ante el notario Héctor J. González Vázquez y otorgó, en unión a los hijos de su extinto esposo, una extensa escritura de partición, en la cual renunció a su cuota usufructuaria. *En esta ocasión se señala que ella no sabe escribir y por tal motivo estampó sus huellas y, a su ruego, su hijo Juan Ramírez Viera escribió sus iniciales y firmó el folio.* (²)

Segundo señalamiento: La demandada Ramírez Carrasquillo fue acompañada durante el cierre de la escritura por su hijo y nuera, los otros dos demandados. Nos preguntamos, ¿cómo es posible que éstos permitieran que fuera intimidada?

Las declaraciones transcritas, unidas a estas otras realidades, nos obligan a concluir que el error aquí cometido no fue perjudicial. El tribunal de instancia tuvo fundamentos suficientes para concluir que no hubo ninguna clase de intimidación de parte de la demandante hacia la demandada Ramírez Carrasquillo. En *Rodríguez* v. *M. Joglar & Co., S. en C.*, 46 D.P.R. 350 (1934), resolvimos que no existe intimidación cuando una persona hace saber a otra que se pıopone ejercer su derecho legítimo de acudir a los tribunales si no se le hace efectiva una obligación exigible. Allí añadimos que el hecho de que un acreedor exprese que, de no garantizársele su deuda, ejercerá su derecho de cobrar judicialmente su crédito, no constituye intimidación. Y además nos manifestamos: "[n]os basta con saber que en este caso no hubo intimidación, que José Ramón Rodríguez y su esposa hipotecaron el inmueble que se describe en la demanda a favor de la demandada sabiendo que su padre había contraído una deuda con esta firma, y que si nos atenemos a las alegaciones de la demanda y al testimonio de José Ramón Rodríguez, el contrato celebrado entre la demandada y los demandantes no constituye otra cosa que una operación para garantizar la deuda contraída por Francisco J. Rodríguez." Págs. 355–356. También en *Rivera*

---

(²)Juan Ramírez Viera no era hijo del causante Felipe González Soto.

v. *Banco Industrial, etc. y García, Int.*, 49 D.P.R. 709 (1936), reconocimos que esta norma —la amenaza de un acreedor de valerse de sus remedios legales no equivale a intimidación— no es inflexible. Añadimos que debía aplicarse inteligentemente en aquellos casos apropiados y no debe seguirse a ciegas cuando, bajo las circunstancias peculiares del caso específico, el resultado sería contrario a la equidad, irrazonable para el deudor, o injusto. *Cf. Díaz Freytes* v. *M.M.M.*, 110 D.P.R. 187 (1980).

En el caso de autos no concurren ni están presentes dichas circunstancias.

*Se dictará sentencia confirmatoria.*

El Juez Asociado Señor Díaz Cruz emitió opinión disidente a la cual se une el Juez Asociado Señor Irizarry Yunqué.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz a la que se une el Juez Asociado Señor Irizarry Yunqué.

Este es el recurso de una madre atemorizada, coaccionada que en estado de zozobra y de total incomprensión de las consecuencias de sus actos hipotecó su patrimonio por $28,001.50 presuntivamente para evitar que le embargaran los muebles de la casa a su hijo por delincuencia en el pago de un pagaré de $16,292 que la financiera San Juan Credit, Inc. había comprado con descuento a la acreedora original. Al no pagarse los intereses, la corporación acreedora demandó y obtuvo sentencia contra esta Sra. Concepción Ramírez por los $28,001.50 de principal, intereses acumulados por $2,240.12 y las costas.

La opinión, en aparente inadvertencia, para sostener el criterio de que el consentimiento de la demandada doña Concepción Ramírez Carrasquillo no estaba herido de muerte por coacción, presión sicológica, festinación, miedo e ignorancia, transcribe no de la exposición narrativa de la

prueba certificada por el Juez Sr. Pedro J. Martínez quien presidió el juicio sino de otra sometida por la financiera San Juan Credit recurrida, sin más firma que la de su propio abogado que infortunadamente tituló "exposición parcializada" y que así resulta en efecto pues en ella se omite parte sustancial de los testimonios referentes a la invalidez de la demandada en aquel momento del 2 marzo, 1979 en que doña Concepción, analfabeta, hizo cruces y estampó huellas digitales en un pagaré al portador por $28,001.50, a vencer 14 meses después: el 2 mayo, 1979; e hipotecó en garantía de dicha obligación "todos sus derechos y/o participación hereditaria que le corresponde o le pueda corresponder en la herencia [de su finado esposo Felipe González Soto]" incluso su participación en los gananciales de la extinta sociedad conyugal;(¹) imponiéndosele una cláusula de aceleración que permite al acreedor ejecutar la hipoteca en defecto de pago de un solo plazo de intereses que se fijaron al 8% en plazos mensuales de $186.68, pagaderos *por adelantado*.

Al recurrir la demandada de la sentencia que equivalía al doble de la deuda de su hijo, expedimos el auto de revisión el 10 abril, 1980 y el 30 junio, 1980 concedimos término de 60 días a la parte recurrente para someter la exposición narrativa de la prueba (E.N.P.). En moción de 31 octubre, 1980 el abogado de la financiera recurrida informó a este Tribunal que tenía preparada una E.N.P. en la que faltaban la firma del juez y del abogado de la recurrente; le ordenamos que obtuviera la certificación del juez; el 20 febrero, 1981 la demandada recurrente nos informó que por resolución en corte abierta luego de vista, el 22 enero, 1981, el juez había aprobado la E.N.P.; el 26 febrero, 1981 ordenamos al secretario de instancia que elevara la E.N.P. aprobada y certificada, la que nos fue remitida con carta de trámite recibida en su misma fecha de 12 marzo,

---

(¹) El inmueble afectado: Casa de hormigón y bloques en la Urb. Sevilla, del barrio Sabana Llana, Río Piedras y solar de 347.29 m/c.

1981. Un día antes, el 11 de marzo, el demandante-recurrido presentó en nuestra Secretaría la E.N.P. que llamó parcializada (*sic*) sin más signo de autenticidad que la firma de su abogado y la que por error se transcribe en la opinión como fundamento de decisión. Como no se recoge allí la constante intervención del abogado del demandante con objeciones —sostenidas por el tribunal— que excluyeron prueba de falta de consentimiento, impidieron que se declarara sobre el estado anímico de doña Concepción, y no le permitieron a su abogado ni siquiera incluir en el récord como evidencia ofrecida y rechazada, lo que dirían estos testigos de declarar sobre ausencia de consentimiento, objeto y causa en el otorgamiento del pagaré, a la opinión escapa la dimensión y gravedad de la decisión de instancia de cerrar el tribunal para doña Concepción *desde un principio y al anunciar su prueba la parte demandada.* Era de rigor admitir la prueba de la parte demandada, si consideramos que el vicio de consentimiento, objeto y causa *surge de la propia prueba de la financiera demandante* que llamó como testigos suyos a los deudores. Ella no puede evadir las consecuencias de promover con sus propios testigos, la cuestión de nulidad y dolo.

En final esfuerzo para que no fracase la justicia, insertamos a continuación el texto literal de la E.N.P. que nos certificó el Juez Superior Sr. Pedro J. Martínez, de la Sala de San Juan.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

San Juan Credit, Inc.
    Demandante
          v.          Núm. R-80-117        Revisión
Concepción Ramírez
Carrasquillo, Juan
Ramírez Viera y Quénica
Rodríguez de Ramírez
    Demandados.

## *EXPOSICIÓN NARRATIVA DE LA PRUEBA*

Por la parte demandante comenzó declarando el propio co-demandado Juan Ramírez Viera. Este declaró como sigue:

### Testimonio de Juan Ramírez Viera

Resido en Villa Capri. Estoy casado con Quénida Rodríguez Berríos. Que conoce a la Lcda. Tejera en relación a una casa que le compró a través de veteranos. Le quedó debiendo $14,000.00 más intereses.

Concepción Ramírez Carrasquillo es su madre.

P— ¿Ha habido alguna relación comercial con su madre?

R— No.

P— ¿Para el 2 de marzo de 1979 su Señora Madre otorgó alguna escritura?

R— Sí.

P— ¿Por qué razón?

R— El 2 de marzo me fueron a buscar al trabajo en relación a un embargo por una deuda que yo nunca he visto. No hubo embargo ese día.

Cuando llegué a mi casa me encuentro que a mi esposa la habían amenazado, que con el revólver volarían el candado, que se llevarían las alfombras y las rejas.

El Lcdo. Rivera Arvelo me hizo ciertas sugerencias. Al ver a mi esposa nerviosa yo también me puse nervioso.

Me preguntó si tenía algún pariente que tuviera una propiedad que respondiera me sugirió el nombre de mi madre. Yo le dije al Lcdo. Rivera Arvelo que mi mamá tenía una propiedad pero que eran bienes de herencia de nosotros.

Me preguntó donde vivía mi mamá. Fue el Lcdo. Rivera Arvelo conmigo en el carro y él fue y habló con mi madre. Mi madre al verme en las condiciones que yo estaba accedió a firmar unas escrituras.

Fuimos a otorgar el documento ante el Lcdo. Rivera Arvelo y ante el Lcdo. Ortiz. La escritura la leyó el Lcdo. Rivera Arvelo y fue firmada ante el Lcdo. Rivera Arvelo.

(Le muestran un pagaré hipotecario firmado por los tres demandados)

El documento habla de una deuda de $28,000.00 pero esa no es la deuda, es que lo firmamos porque estábamos entre la espada y la pared.

En adición al pagaré se le entregó al Lcdo. Rivera Arvelo

toda la documentación relacionada con la casa de mi mamá condicionado a que el Lcdo. Rivera Arvelo los devolvería al otro día. Este no lo hizo ni lo ha hecho hasta la fecha de hoy.
(En relación al Exhibit II)

Reconozco estos documentos. Este documento es la Escritura Número 1 de partición de bienes hereditarios. De ahí surge el derecho de mi madre sobre la propiedad.
(En relación al Exhibit III)

Este documento refleja la deuda original que yo adeudaba a la Lcda. Tejera.
(Termina directo y comienza contrainterrogatorio)

Al momento del embargo me sentía amenazado. Mi madre se sentía amenazada al igual que mi esposa.

P— ¿Qué tiempo transcurre del embargo a la firma de escritura?
Objeción del Lcdo. Rivera Arvelo.

Regla 69 (b) Esa nueva Regla establece que si se ha hecho un convenio y es por escrito no se puede presentar otra prueba. Además el testigo tuvo oportunidad de declarar sobre todos los detalles del otorgamiento del pagaré.

TRIBUNAL

Con lugar la objeción.

La parte demandada argumentó que necesitaba presentar prueba para demostrar que no medió consentimiento, objeto y causa en la firma de la escritura que bajo esas circunstancias se podía presentar prueba extrínseca.

El Tribunal se mantuvo en su posición.

P— ¿Ante quién se otorga la escritura?
R— Ante el Lcdo. Rivera Arvelo.
P— ¿Y el pagaré?
R— Ante el Lcdo. Rivera Arvelo.

Luego la parte demandante trajo a la Lcda. Tejera a declarar.

*Testimonio de la Lcda. Gloria Tejera*

Yo conozco a los esposos Ramírez Viera. Les vendí una propiedad. Quedaron a deber sobre $16,000.00. Esa deuda no fue pagada.

Se extendió un pagaré hipotecario que yo cedí a San Juan Credit. Fue una cesión onerosa.

*Luis Rafael González*

Yo fuí a casa de la Señora Concepción el 2 de marzo para preguntarle dónde vivía el hijo Juan. Yo era el depositario en un embargo que se iba a realizar.

P— ¿A usted le consta si ella otorgó un contrato con San Juan Credit?

R— Sí. Yo estaba en la oficina del Lcdo. Rivera Arvelo.

En contrainterrogatorio declaró que no estuvo presente cuando se otorgó el contrato.

Terminada su prueba la parte demandante, la parte demandada pidió la desestimación del caso y el Tribunal declaró sin lugar tal petición.

Al comenzar su turno la parte demandada el Lcdo. Ortiz manifestó que la parte demandada se proponía presentar prueba para demostrar que no medió consentimiento, objeto y causa en el otorgamiento del pagaré.

Continuó diciendo lo siguiente:

En vista de que el Sr. Juez no permite presentar prueba oral sobre el contrato deseamos vaciar para récord lo que dirían los testigos de sentarse a declarar.

Objeción del Lcdo. Rivera Arvelo

Con lugar — Tribunal

La parte demandada trae a declarar sus testigos.

Quénida Rodríguez Berríos. Yo estaba en mi casa. Llegaron Rivera Arvelo, el Sr. González y un Alguacil. Me dijeron que tenían un embargo. El Sr. González dijo que si no abría . . . . . . [*sic*]

Objeción del Lcdo. Rivera Arvelo

Con lugar — Tribunal

Yo estaba en la oficina del Lcdo. Rivera Arvelo cuando se otorgó el pagaré para que no se embargara.

En relación a ese pagaré la Sra. Concepción Ramírez no recibió a cambio nada.

P— ¿Se le explicó a ella lo que estaba firmando?

R— Ella firmó en consideración a nosotros, ella prácticamente no sabía lo que hacía.

Hay objeción entonces cuando se pretende traer prueba del estado anímico para la contratación.

No se permite declarar al abogado lo que declararía la testigo sobre la forma en que se efectuó la contratación.

Finalmente declara Doña Concepción.

*Testimonio de Concepción Ramírez Carrasquillo*

Fue el Lcdo. Arvelo con mi hijo a mi casa. No sabía para lo que era. Se me habló que buscara unos papeles míos para enseñárselos al Lcdo. Rivera Arvelo. Me cogieron los papeles y me dijeron que eso era para cuestión de unos días, que me los devolverían enseguida. Yo no sabía para que era que me querían.

Cuando yo firmé el pagaré no conocía las consecuencias de lo que estaba firmando, yo no sabía lo que estaba haciendo.

Contrainterrogatorio del Lcdo. Rivera Arvelo

P— ¿Por qué firmó el documento?

R— No sé.

P— ¿Se le leyó en voz alta?

R— Sí lo leyeron no sé lo que leían. No entendía nada. No recuerdo si dije en la oficina que no entendía nada.

Todavía no sé lo que está pasando.

CERTIFICAMOS:

Que la presente expone fielmente la prueba que se presentara en este caso.

(Firmado)  Pedro J. Martínez
           Juez Preside la Vista.

El error señalado como 2° por la recurrente y que inevitablemente requiere la revocación de la sentencia, se formula así:

Cometió error la Honorable Sala sentenciadora al no permitir a los demandados recurrentes presentar prueba sobre la falta de consentimiento, objeto y causa en el contrato.

Ordena la Regla 69 de Evidencia en su inciso (B):

Cuando en un convenio oral o escrito, ya sea público o privado, se hayan incluido todos los términos y condiciones que constituyen la verdadera y última intención de las partes, se considerará que éste es uno integrado, por lo que no cabrá entre los convenientes o sus sucesores en interés, evidencia extrínseca al contenido del mismo excepto en los siguientes casos:

(1) Cuando una equivocación o imperfección en el convenio sea alegada en el litigio;

(2) Cuando la validez del convenio constituye el hecho controvertido.

Esta regla no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare como lo son la situación del objeto a que se contrayere o la de las partes, o para probar ilegalidad o fraude.

Con un mandato tan preciso, es de patente convicción que el juez sentenciador incidió al suprimir a priori, en el momento mismo en que se anuncia, la prueba de invalidez del convenio, de circunstancias que prohijaron el vicio de ilegalidad absoluta en el otorgamiento por la demandada de los referidos documentos de pagaré e hipoteca. Y aumenta el dramatismo de la negación del derecho a ser oído, la desestimación de la petición de la demandada para que al menos se le permitiera llevar al récord lo que sobre ese aspecto crítico declararían los testigos. ¿De qué otro modo puede un litigante obtener la revisión de lo actuado en instancia? La gravedad del error, su potencialidad de perjuicio equivalente a negar audiencia a una parte con visos de finalidad irrevisable, las ignora la opinión porque la E.N.P. que le sirvió de base para decidir, omite éste, que es el más significativo incidente en un pleito donde la validez del convenio constituye el hecho controvertido. La E.N.P. certificada por el magistrado recoge el incidente así:

Terminada su prueba la parte demandante, la parte demandada pidió la desestimación del caso y el Tribunal declaró sin lugar tal petición.

Al comenzar su turno la parte demandada el Lcdo. Ortiz manifestó que la parte demandada se proponía presentar prueba para demostrar que no medió consentimiento, objeto y causa en el otorgamiento del pagaré.

Continuó diciendo lo siguiente:

En vista de que el Sr. Juez no permite presentar prueba oral sobre el contrato deseamos vaciar para récord lo que dirían los testigos de sentarse a declarar.

Objeción del Lcdo. Rivera Arvelo

Con lugar — Tribunal

La parte demandada trae a declarar sus testigos.

Ante estos hechos resulta un eufemismo sostener que el error se cometió, pero que no fue perjudicial. El reclamo de justicia de esta señora fue silenciado mediante objeción del demandante y terminante prohibición a priori del magistrado. La observación en el alegato de la financiera recurrida, y que acoge la opinión, al afecto de que no concibe cómo podía estar coaccionado el consentimiento de doña Concepción Ramírez porque estaba asistida y protegida cuando estampó cruces y huellas por su propio hijo, echa al olvido que éste fue un pobre defensor del interés de su señora madre pues luego de constituirla en su subrogada como deudora, su falta de pago de los intereses desencadenó la ejecución de los bienes de esta señora, que solo la prueba suprimida podía decirnos si fue buena samaritana a la fuerza en las tinieblas de su abismal ignorancia del negocio jurídico en que fue envuelta.

Revocaría la sentencia revisada y remitiría a instancia para continuación del juicio en que se oiga y reciba la prueba de la parte demandada.